# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### February 6, 2013 Session Heard at Nashville

## STATE OF TENNESSEE v. LEDARREN S. HAWKINS

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Madison County**
**No. 09-253      Roy B. Morgan, Jr., Judge**

---

**No. W2010-01687-SC-R11-CD - Filed June 20, 2013**

---

The defendant was convicted in the Circuit Court for Madison County of first degree murder and tampering with physical evidence. On this appeal, the defendant seeks reversal of his first degree murder conviction on the ground that the trial court declined his request for a jury instruction on defense of a third person. He also seeks reversal of his evidence-tampering conviction on the ground that his abandonment of the murder weapon did not amount to tampering with physical evidence. The Court of Criminal Appeals upheld his convictions and sentences. *State v. Hawkins*, No. W2010-01687-CCA-R3-CD, 2012 WL 543048 (Tenn. Crim. App. Feb. 16, 2012). Based on this record, we have determined that the trial court properly denied the defendant's request for an instruction on defense of a third person. However, we have also determined that the defendant did not tamper with physical evidence in violation of Tenn. Code Ann. § 39-16-503(a)(1) (2010) by tossing the murder weapon over a short fence where it could be easily observed and recovered. Accordingly, we affirm the defendant's conviction and sentence for first degree murder and reverse his conviction and sentence for tampering with physical evidence.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed in Part and Reversed in Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which GARY R. WADE, C.J., JANICE M. HOLDER, CORNELIA A. CLARK, and SHARON G. LEE, JJ., joined.

Joseph A. McClusky, Memphis, Tennessee, for the appellant, Ledarren Hawkins.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Sophia S. Lee, Senior Counsel; James G. Woodall, District Attorney General; Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I.

Ledarren Hawkins lived in Memphis and was a member of the Bloods gang. Because several of his friends were enrolled at Lane College in Jackson, Tennessee, he decided to visit the campus on January 27, 2009. In preparing for his trip, Mr. Hawkins packed a number of items of red clothing.[1] He also brought along "for protection" a 12-gauge, single-shot Springfield Model 107 shotgun with silver duct tape on the grip and the barrel sawed off.

On the evening of January 28, 2009, Mr. Hawkins and his friends drove to the Jackson Family Fun Center, a sprawling facility housing a myriad of modern amusements, including a bowling alley, a miniature golf course, and a karaoke lounge. Without his friends' knowledge, Mr. Hawkins brought along his shotgun and hid it in his friend's truck while the remainder of the group entered the bowling alley.

While Mr. Hawkins and his friends were bowling, their use of gang signs associated with the Bloods caught the attention of another group of bowlers who were members of a rival gang called the Crips. The two groups exchanged some hostile epithets, and the dispute spilled out into the Fun Center's parking lot. When Mr. Hawkins came outside, he walked to his friend's truck to drive it closer to the crowd gathered in the parking lot. When he emerged from the truck, he was carrying his shotgun. As Mr. Hawkins walked toward the crowd, he leveled his shotgun at one of the fighters, nineteen-year-old Jerome Ellington, and pulled the trigger. Mr. Hawkins did not know Mr. Ellington, who was unarmed.

Mr. Ellington staggered through the side door of the karaoke lounge with blood gurgling from the gunshot wound in his chest. He collapsed behind the wet bar and was never revived. Meanwhile, Mr. Hawkins sprinted across the parking lot toward the miniature golf course. Mr. Hawkins tossed his shotgun over a short metal fence, where it landed near the tenth hole of the miniature golf course, surrounded by a light dusting of snow.

The police arrived minutes after the shooting, which occurred around 10:20 p.m. They began interviewing witnesses and even stopped and questioned Mr. Hawkins. However, the police permitted Mr. Hawkins to leave with his friends. The police reviewed the Fun Center's security recordings and began a thorough search of the area.

When the Jackson Police Department's crime scene technician arrived at the scene, he found an officer standing guard over something near the northeast corner of the miniature

---

[1]Members of the Bloods gang typically adorn themselves in red to advertise their affiliation.

golf course. The fence around the miniature golf course was four feet tall with wide spaces between the thin metal rails. When the technician approached the other officer, he saw Mr. Hawkins's shotgun lying on the snow in plain view, as can be seen in the following two photographs taken on the night of the murder.[2]





---

[2]The record does not reveal precisely how much time elapsed before the authorities discovered the shotgun. However, the technician photographed the shotgun and then collected and tagged it at 12:42 a.m. on January 29, 2009.

Information obtained at the scene led the police to Mr. Hawkins. Less than three hours after the fatal shooting, the police found Mr. Hawkins hiding in a closet at a friend's apartment. They arrested him and charged him with the murder of Mr. Ellington. On May 4, 2009, a Madison County grand jury indicted Mr. Hawkins for first degree premeditated murder in violation of Tenn. Code Ann. § 39-13-202 (2010) and tampering with evidence in violation of Tenn. Code Ann. § 39-16-503 (2010).

Mr. Hawkins's trial took place in the Circuit Court for Madison County from March 29 to March 31, 2010. The State presented twenty-four witnesses. The only witness for the defense was Mr. Hawkins himself. Prior to trial, Mr. Hawkins's counsel requested the trial court to instruct the jury on both self-defense and defense of a third person. The trial court postponed its decision on these requests until after Mr. Hawkins testified.

Mr. Hawkins testified that he was in his friend's truck when the fight broke out and that he was preparing to pick up his friends and leave. He also testified that, from inside the truck, he saw a young man in a dark shirt retrieve something from a nearby car. He stated that he feared for his friends because he thought the young man in the dark shirt had armed himself with a gun. Accordingly, Mr. Hawkins parked the truck under the bowling alley's canopy and emerged holding his shotgun.

Mr. Hawkins testified that he intended to approach the melée and to fire a warning shot to stop the fighting. However, he stated that he was suddenly gripped by fear when a tall, muscular young man in a dark shirt – Mr. Ellington – approached him while appearing to be reaching toward his waistband. Mr. Hawkins stated that, acting in self-defense, he aimed his shotgun at Mr. Ellington and pulled the trigger. Mr. Hawkins also testified that he "just took off running" after shooting Mr. Ellington because he did not know whether someone else in the crowd might have a gun and a desire to retaliate. He explained that "I was so shook up I couldn't even think straight. All I was doing was running." Mr. Hawkins soon found himself on the other end of the miniature golf course, where he tossed his shotgun over the fence.

The defense rested after Mr. Hawkins testified. At that point, the trial court granted Mr. Hawkins's motion for an instruction on self-defense but found no factual basis for instructing the jury on defense of a third person. Thereafter, the jury convicted Mr. Hawkins of first degree premeditated murder and evidence tampering. Mr. Hawkins received a life sentence for the murder conviction and a concurrent three-year sentence for the tampering conviction.

On appeal, Mr. Hawkins challenged the sufficiency of the evidence to support the tampering conviction and the trial court's denial of the jury instruction on defense of a third person. He argued that he merely abandoned the shotgun without actually concealing it and

that his use of the weapon was actually motivated by his concern for his friends. The Court of Criminal Appeals found no error in the jury instructions and found that the evidence supported Mr. Hawkins's tampering conviction. *State v. Hawkins*, No. W2010-01687-CCA-R3-CD, 2012 WL 543048, at *14-16 (Tenn. Crim. App. Feb. 16, 2012). We granted Mr. Hawkins permission to appeal. We agree with the Court of Criminal Appeals that the evidence did not warrant a jury instruction on defense of a third person. However, based on our interpretation of Tenn. Code Ann. § 39-16-503, we reverse the Court of Criminal Appeals and vacate Mr. Hawkins's conviction for tampering with physical evidence.

## II.

We turn first to the trial court's refusal to charge the jury on defense of a third person. Mr. Hawkins asserts that the trial court erred by declining to give this charge because his testimony reflects that he retrieved his shotgun from the truck and shot Mr. Ellington in an effort to protect his friends, who were embroiled in a gang fight. We find little merit in this argument.

## A.

The question of whether the facts in a criminal case require the jury to be instructed regarding a particular defense is a mixed question of law and fact. We review these questions de novo, with no presumption of correctness. *See State v. Rogers*, 188 S.W.3d 593, 628-29 (Tenn. 2006); *State v. Thacker*, No. E2011-02401-CCA-R3-CD, 2012 WL 4078440, at *8 (Tenn. Crim. App. Sept. 18, 2012) (No Tenn. R. App. P. 11 application filed). Errors in jury instructions are generally subject to a "harmless error" analysis. *State v. Williams*, 977 S.W.2d 101, 104-05 (Tenn. 1998). However, when the jury instructions mislead the jury as to the applicable law or fail to "fairly submit" the relevant legal issues, such as available defenses, we hold such deficiencies to be prejudicial error. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

## B.

Self-defense is a complete defense against a murder charge. *See* 11 David L. Raybin, *Tennessee Practice: Criminal Practice and Procedure* § 28:36, at 54 (rev. ed. 2008) (hereinafter *Criminal Practice and Procedure*). To prevail on the theory of self-defense, a defendant must show that he or she was "not engaged in unlawful activity" and was "in a place where the person has a right to be." Tenn. Code Ann. § 39-11-611(b)(1) (2010). In addition, the use of deadly force in self-defense must be predicated on "a reasonable belief

that there is imminent danger of death or serious bodily injury."[3] The danger must be "real, or honestly believed to be real[,]"[4] and "[t]he belief of danger [must be] founded on reasonable grounds."[5] The defense of self-defense is generally not available if the defendant provoked or consented to the danger.[6]

In a manner similar to Tenn. Code Ann. § 39-11-611, Tenn. Code Ann. § 39-11-612 (2010) recognizes "defense of another." The statute permits a person to use deadly force "to protect a third person" when he or she "reasonably believes" that the third person would be justified in using deadly force under Tenn. Code Ann. § 39-11-611[7] and that "the intervention is immediately necessary to protect the third person."[8] The application of the right to defend another should be "determined in the same fashion as the right of self-defense" under Tenn. Code Ann. § 39-11-611. *See* Tenn. Code Ann. § 39-11-612 Sentencing Comm'n Cmts.; *see also* 11 *Criminal Practice and Procedure* § 28:39, at 60. A person's right to defend a third party is no greater than the third party's right to defend himself or herself. *State v. Barnes*, 675 S.W.2d 195, 196 (Tenn. Crim. App. 1984).

In criminal cases, trial courts have the duty, without request, to give proper jury instructions as to the law governing the issues raised by the nature of the proceeding and the evidence introduced at trial. *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011) (quoting *State v. Teel*, 793 S.W.2d 236, 249 (Tenn. 1990)). This obligation extends to general defenses,[9] such as self-defense, defense of another, or defense of a habitation. *See, e.g.*,

---

[3]Tenn. Code Ann. § 39-11-611(b)(2)(A).

[4]Tenn. Code Ann. § 39-11-611(b)(2)(B).

[5]Tenn. Code Ann. § 39-11-611(b)(2)(C).

[6]Tenn. Code Ann. § 39-11-611(e)(1)-(2).

[7]Tenn. Code Ann. § 39-11-612(1).

[8]Tenn. Code Ann. § 39-11-612(2).

[9]Tennessee makes a technical distinction between general defenses and affirmative defenses. The distinction is important because "affirmative defenses," which are specifically labeled as such, (1) require pre-trial notice, and (2) once "fairly raised" and submitted to the jury, must be proven by the defendant by a preponderance of the evidence (rather than disproved by the State beyond a reasonable doubt). *See* Tenn. Code Ann. §§ 39-11-203 (general defenses), -204 (affirmative defenses). Self-defense, defense of another, duress, necessity, and mistake of fact are examples of general defenses. *See State v. Bledsoe*, 226 S.W.3d 349, 355-56 (Tenn. 2007) (duress); *State v. Green*, 995 S.W.2d 591, 604-06 (Tenn. 1998) (duress and necessity); *State v. Parker*, No. M2009-02448-CCA-R3-CD, 2011 WL 51734, at *20 (Tenn. Crim. App. Jan. 6, 2011) (mistake of fact), *perm. app. denied* (Tenn. May 26, 2011); *State v. Blackwood*, No. W1999-01221-
(continued...)

*Morrison v. State*, 212 Tenn. 633, 638, 371 S.W.2d 441, 443 (1963) (observing that the jury could have misconstrued the rights of the defendant when the trial court failed to provide an instruction on the general defense of defense of a habitation, even though the defendant had not requested such a charge). A trial court's refusal to grant a special instruction is error only when the general charge does not fully and fairly state the applicable law. *State v. Hanson*, 279 S.W.3d 265, 280 (Tenn. 2009); *Douglass v. State*, 213 Tenn. 643, 646, 378 S.W.2d 749, 750 (1964).

A general defense, such as defense of another, need not be submitted to the jury unless it is "fairly raised by the proof." Tenn. Code Ann. § 39-11-203(c) (2010). The quantum of proof necessary to fairly raise a general defense is less than that required to establish a proposition by a preponderance of the evidence. To determine whether a general defense has been fairly raised by the proof, a court must consider the evidence in the light most favorable to the defendant and draw all reasonable inferences in the defendant's favor. Whenever admissible evidence fairly raises a general defense, the trial court is required to submit the general defense to the jury. From that point, the burden shifts to the prosecution to prove beyond a reasonable doubt that the defense does not apply. *State v. Bledsoe*, 226 S.W.3d at 355.

**C.**

In this case, the evidence fairly raised the possibility that Mr. Hawkins acted in self-defense when he fired his shotgun at Mr. Ellington. The evidence did not, however, fairly raise the possibility that, at the moment he fired the weapon, Mr. Hawkins believed that pulling the trigger was "immediately necessary to protect [a] third person." Tenn. Code Ann. § 39-11-612(2).

At trial, Mr. Hawkins consistently described his mental state – at the moment of pulling the trigger – as one of self-defense. Mr. Hawkins testified he originally retrieved the gun from the truck after the fight broke out because he was concerned for the safety of his best friend, who was involved in the fight. Mr. Hawkins said he saw someone who resembled Mr. Ellington take something out of a car, and he feared it was a weapon. He said he planned to fire the gun into the air to scatter the crowd. However, as Mr. Hawkins approached the melée, his attention shifted: "A big guy that was wearing black approached me. I didn't even see him coming. He just popped right in front of me. . . . He was reaching like in his waist . . . like he was trying to get something." Mr. Hawkins testified that he felt

[9](...continued)
CCA-R3-CD, 2000 WL 1672343, at *9-10 (Tenn. Crim. App. Nov. 2, 2000) (self-defense, necessity, mistake of fact, and defense of another), *perm. app. denied* (Tenn. May 21, 2001). We encourage attorneys and judges to refrain from blurring the distinction between general defenses and "affirmative" defenses.

threatened and afraid. He feared that Mr. Ellington was reaching for a gun, and that he was about to become "a victim of a crime." In response to his lawyer's question, "Did you intend to kill him," Mr. Hawkins replied, "No, sir, just to protect myself."

On cross examination, Mr. Hawkins again testified that his intention in getting the gun was to help his best friend. But he then testified that pulling the trigger

> was just an honest mistake that was based on protecting myself.
> . . . [P]rotection is self-defense. Protecting myself is . . . self-defense. . . . And if you saying me protecting myself by pulling this trigger is self-defense, yes, sir, I say I'm going for self-defense. . . . Like I said, I was scared. I felt threatened, and he was approaching me, and I have a gun in my hand, so my first thought is – I mean, I'm protecting myself, protecting myself. . . . All I thought was to protect myself. By the gun being in my hand, the trigger was pulled. . . . I was scared.

Mr. Hawkins was the sole witness for the defense. After the defense rested, the trial court held a colloquy concerning potential jury instructions and denied Mr. Hawkins's motion for an instruction on defense of a third person. In doing so, the court made a distinction between the moment Mr. Hawkins retrieved the gun initially and the moment he actually used the weapon. Concerning Mr. Hawkins's motivations when he fired the gun, the court noted:

> [T]he defendant clearly testified that he was defending himself. It was just to protect himself. . . . He used the words "concerned about my friends" when he got out of the car, but that testimony alone, being concerned about his friends, would not justify a third-party defense claim. . . . There's no ambiguity from his own testimony or I would [rule] otherwise.

Having read the trial transcript, we agree with the trial court. The alpha and omega of Mr. Hawkins's defense was his own testimony that he shot Mr. Ellington in a moment of fear to protect *himself*. The State presented evidence that Mr. Hawkins killed for more vindictive reasons. No evidence presented at trial "fairly raised" the possibility that Mr. Hawkins shot Mr. Ellington because he believed doing so was "immediately necessary" to protect a third person. Mr. Hawkins was not entitled to a jury instruction on defense of another.

## III.

Mr. Hawkins was also convicted of tampering with physical evidence in violation of Tenn. Code Ann. § 39-16-503. He asserts on this appeal that the evidence regarding his disposal of his shotgun does not support this conviction. We agree.

## A.

Our role in reviewing a challenge to the sufficiency of the evidence is to "determine whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Cross*, 362 S.W.3d 512, 523 (Tenn. 2012) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *see also* Tenn. R. App. P. 13(e). In conducting this analysis, "we must afford the State the strongest legitimate view of the evidence and any reasonable inferences that may be drawn from it." *State v. James,* 315 S.W.3d 440, 455 (Tenn. 2010). A verdict of guilty replaces the defendant's presumption of innocence with a presumption of guilt. The defendant thus bears the burden of demonstrating insufficiency of the evidence. *State v. Sisk,* 343 S.W.3d 60, 65 (Tenn. 2011).

We apply the same standard of review to both circumstantial evidence and direct evidence. Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt. *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012); *State v. Dorantes,* 331 S.W.3d 370, 379-81 (Tenn. 2011).

This case also presents an issue of first impression for this Court – whether "mere abandonment" of a piece of evidence satisfies the elements of evidence tampering – and this question requires us to interpret a criminal statute. Our role in construing a statute is to ascertain and give effect to the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope. We begin by focusing on the statute's words, presuming that each word has its own meaning and purpose. If the language is clear and unambiguous, we need look no further. *Keen v. State*, __ S.W.3d __, __, No. W2011-00789-SC-R11-PD, 2012 WL 6631245, at *12 (Tenn. Dec. 20, 2012). When faced with ambiguous language, however, we may refer to the broader statutory scheme, the legislative history, and other sources, including the established canons of statutory construction. *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010); *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 836 (Tenn. 2008). When we encounter an issue of first impression, we often review the decisions of other states, as well as other authorities, to assist our analysis. *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005), *overruled on other grounds by Himmelfarb v. Allain*, 380 S.W.3d 35, 41 (Tenn. 2012).

**B.**

A criminal conviction cannot stand unless the State proves every statutory element of the charged offense beyond a reasonable doubt. Accordingly, when a defendant challenges the sufficiency of the State's evidence, the reviewing courts must consider the sufficiency of the State's evidence with regard to each element of the offense for which the defendant was convicted. *Fiore v. White*, 531 U.S. 225, 228-29 (2001); *State v. Parker*, 350 S.W.3d 883, 909 (Tenn. 2011).

Tenn. Code Ann. § 39-16-503, like many of Tennessee's criminal statutes, traces its lineage to the Model Penal Code. Tenn. Code Ann. § 39-16-503(a)(1) defines the offense of tampering with physical evidence as follows:

> (a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to:
>
> > (1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding . . . .[10]

This statute, like other statutes based on Model Penal Code § 241.7, requires the State to prove three elements beyond a reasonable doubt – "timing, action, and intent." *State v. Gonzales*, 2000 UT 136, ¶ 11, 2 P.3d 954, 957. The "timing" element requires that the act be done only after the defendant forms a belief that an investigation or proceeding "is pending or in progress." The "action" element requires alteration, destruction, or concealment. The "intent" element requires that the defendant intended to hinder the investigation or official proceeding by impairing the record's, document's or thing's "verity, legibility, or availability as evidence." The "timing" element describes a necessary attendant circumstance to the crime – the State must prove beyond a reasonable doubt that the defendant committed the act while "knowing that an investigation or official proceeding is pending or in progress." Mr. Hawkins has not challenged the verdict with regard to this first element.

---

[10]The version of the tampering statute in the Model Penal Code § 241.7 (1962) states:

> A person commits a misdemeanor if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> > (1) alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding or investigation . . . .

The "action" element involves the *actus reus* of the offense. The State must prove beyond a reasonable doubt that the defendant altered, destroyed, or concealed a piece of evidence in the form of a "record, document or thing." In *State v. Majors*, we defined the verb "alter" as "to make different without changing into something else." *State v. Majors*, 318 S.W.3d at 859. To "destroy" a thing, we said, means to ruin its "evidentiary value." *State v. Majors*, 318 S.W.3d at 859. Finally, we defined "conceal" as "to prevent disclosure or recognition of" a thing or "to place [a thing] out of sight." *State v. Majors*, 318 S.W.3d at 859. The State's case against Mr. Hawkins is premised on his "concealment" of his shotgun.

This Court has applied a "broad, generic construction" to the word "thing" as it is used in Tenn. Code Ann. § 39-16-503(a)(1). *State v. Majors*, 318 S.W.3d at 859. We have held that the word refers to "an object or entity not precisely designated and perhaps not even capable of being designated." *State v. Majors*, 318 S.W.3d at 860. Accordingly, the State is not required "to identify exactly what 'thing' was tampered with." *State v. Majors*, 318 S.W.3d at 859. In this case, however, there is no dispute regarding the "thing" Mr. Hawkins is alleged to have tampered with. To convict Mr. Hawkins of tampering with physical evidence, the State was required to prove beyond a reasonable doubt that Mr. Hawkins concealed the shotgun when he tossed it over the fence.

The "intent" element defines the defendant's necessary mental state. The State must prove that the defendant altered, destroyed, or concealed the record, document, or thing "with intent to impair its verity, legibility, or availability as evidence." Tampering with physical evidence is thus a "specific intent" crime. *See State v. Jackson*, 237 P.3d 754, 758 (N.M. 2010); 3 *American Law Institute. Model Penal Code and Commentaries* § 241.7, at 180 (1962) ("The limiting factor in Paragraph (a) is the requirement of specific intent. The statute punishes any kind of tampering with any document or thing, but only if the defendant acts 'with purpose to impair its verity or availability' in an official proceeding or investigation."). Thus, in this case, the State was required to prove beyond a reasonable doubt that when Mr. Hawkins tossed his shotgun over the fence, he intended to impair its verity or availability as evidence in either the police investigation or his eventual trial. Without this specific intent, Mr. Hawkins's conviction cannot stand.

## C.

Twenty-nine jurisdictions have enacted criminal statutes based on Section 241.7 of the Model Penal Code.[11] However, the language of these statutes varies from jurisdiction to

---

[11]The jurisdictions are Alabama, Ala. Code § 13A-10-129 (LexisNexis 2010); Alaska, Alaska Stat. § 11.56.610 (2010); Arizona, Ariz. Rev. Stat. Ann. § 13-2809 (2010); Arkansas, Ark. Code Ann. § 5-53-111 (continued...)

jurisdiction. For example, while Tennessee's version of the statute does not include the word "removes," other states have retained that word and even added other terms, such as "mutilates," "suppresses," or "disguises."[12] In comparing Tennessee's statute to that of other Model Penal Code jurisdictions, we must take care not to rely on cases that hinge on words that our statute does not contain.[13]

Most, if not all, jurisdictions that utilize a version of Section 241.7 of the Model Penal Code have recognized that a defendant does not violate the statute when he or she merely

_____

[11](...continued)
(2005); Colorado, Colo. Rev. Stat. § 18-8-610 (2012); Connecticut, Conn. Gen. Stat. Ann. § 53a-155 (West 2007); Delaware, Del. Code Ann. tit. 11, § 1269 (2007); District of Columbia, D.C. Code § 22-723 (LexisNexis 2010); Florida, Fla. Stat. Ann. § 918.13 (West 2006); Georgia, Ga. Code Ann. § 16-10-94 (2011); Hawaii, Haw. Rev. Stat. Ann. § 710-1076 (LexisNexis 2007); Illinois, 720 Ill. Comp. Stat. 5/31-4 (West 2010); Kentucky, Ky. Rev. Stat. Ann. § 524.100 (LexisNexis 2008); Mississippi, Miss. Code Ann. § 97-9-125 (2006); Missouri, Mo. Ann. Stat. § 575.100 (West 2011); Montana, Mont. Code Ann. § 45-7-207 (2011); Nebraska, Neb. Rev. Stat. § 28-922 (2008); New Hampshire, N.H. Rev. Stat. Ann. § 641:6 (LexisNexis 2007); New Jersey, N.J. Stat. Ann. § 2C:28-6 (West 2005); New Mexico, N.M. Stat. Ann. § 30-22-5 (LexisNexis 2004); New York, N.Y. Penal Law § 215.40 (McKinney 2010); North Dakota, N.D. Cent. Code Ann. § 12.1-09-03 (2012); Ohio, Ohio Rev. Code Ann. § 2921.12 (West 2006); Oregon, Or. Rev. Stat. § 162.295 (2011); Pennsylvania, 18 Pa. Cons. Stat. Ann. § 4910 (West 1983); Tennessee; Texas, Tex. Penal Code Ann. § 37.09 (West 2011 & Supp. 2012); Utah, Utah Code Ann. § 76-8-510.5 (LexisNexis 2008); and Washington, Wash. Rev. Code Ann. § 9A.72.150 (West 2009 & Supp. 2012).

In the federal system, tampering with physical evidence is treated as a sentencing enhancement factor in the sentencing guidelines. Section 3C1.1 of the Federal Sentencing Guidelines provides for a two-level sentence enhancement for offenders who "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice" related to the offense of conviction or a closely related offense. Under application note 4(D), this includes "destroying or concealing" material physical evidence. The note specifies, however, that

if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it results in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender[.]

U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.4(D) (2012).

[12]*See, e.g.*, Alaska Stat. § 11.56.610 ("destroys, mutilates, alters, suppresses, conceals, or removes"); Ga. Code Ann. § 16-10-94 ("disguises").

[13]In Louisiana, for example, the crime is much broader. *See State v. Jones*, 2007-1052 (La. 6/3/08), 983 So. 2d 95 (upholding a tampering conviction for dropping marijuana in the presence of an officer because Louisiana's statute criminalizes the mere "movement" of evidence). Likewise, a case such as *State v. Daoud*, 965 A.2d 1136 (N.H. 2009), is not instructive because it hinges on the meaning of "removes" in New Hampshire's tampering statute.

"abandons" physical evidence of a street crime while running from police or fleeing the scene of the crime.

Courts in Florida were among the first to recognize the distinction between tampering and abandonment. The defendant in *Boice v. State*, 560 So. 2d 1383 (Fla. Dist. Ct. App. 1990), bought cocaine from an undercover police officer. After the police surrounded him, he dropped the drugs out of his car window. The appellate court reversed his conviction for tampering with the evidence:

> The defendant's act of tossing the small bag of cocaine away from his person while in the presence of the arresting officers at the scene of the purchase does not rise to the level of conduct which constitutes a concealment . . . of something for the purpose of impairing its availability for the criminal trial. . . . Mr. Boice merely abandoned the evidence.

> The statute must be construed most favorably to the accused. . . . [W]e do not believe that the legislature intended the simple act of abandoning a bag of crack cocaine at the scene of an arrest, in the clear sight of a law enforcement officer, to constitute the commission of this additional third-degree felony. If the defendant's act in this case constituted tampering, then a nineteen-year-old who threw a can of beer from his car when stopped by a police officer would commit not only the second-degree misdemeanor of possession of alcoholic beverages, but also the third-degree felony of tampering with evidence. We do not believe that the legislature intended an additional felony under such circumstances.

*Boice v. State*, 560 So. 2d at 1384-85; *but see State v. Jennings*, 666 So. 2d 131, 133 (Fla. 1995) (cautioning against an "overly broad reading of *Boice*").

Our Court of Criminal Appeals later relied on *Boice* when it vacated the tampering conviction of a defendant who tossed aside a bag of marijuana while being pursued by police. *State v. Patton*, 898 S.W.2d 732, 736 (Tenn. Crim. App. 1994). The court found that construing Tennessee's tampering statute in a way that allows piggybacking a felony tampering conviction on top of a misdemeanor possessory offense could lead to "absurd" or "unreasonable" results. *State v. Patton*, 898 S.W.2d at 736; *see also Anderson v. State*, 123 P.3d 1110, 1118 (Alaska Ct. App. 2005) (noting that a broad reading of the statute would mean that a person who shoplifts a candy bar would commit three separate acts of felony evidence tampering); *State v. Fuqua*, 696 A.2d 44, 47 (N.J. Super. Ct. App. Div. 1997)

-13-

(rejecting a broad reading of the tampering statute because it would absurdly require all illegal substances and weapons to be carried in plain view).

In the wake of *Boice*, *Patton*, and similar decisions, the jurisdictions that have enacted statutes based on Section 241.7 of the Model Penal Code have developed a "unanimous" consensus that when a person who is committing a possessory offense drops evidence in the presence of police officers, and the officers are able to recover the evidence with minimal effort, discarding the evidence amounts to "mere abandonment," not tampering. *See Vigue v. State*, 987 P.2d 204, 206-09 (Alaska 1999) (collecting cases).

Outside of this core definition of abandonment, however, lies a gray area where courts have experienced difficulty drawing a line between abandonment and tampering. Does the abandonment exception apply to non-possessory offenses? Can it apply when the police do not see the defendant in the act of discarding the evidence? Can it apply if the police never find the evidence or if they find it with difficulty? The answer depends on the wording of the applicable statute and the precise facts of each case.

We have found several such cases in which courts have upheld convictions for tampering by concealment. In drug cases, for example, convictions for tampering by concealment have been upheld when a defendant swallows drugs[14] and when a defendant flushes drugs down a toilet as police approach and the drugs are recovered.[15] One defendant's conviction was upheld when he tossed the drugs out of his moving vehicle, kept driving for a half mile, and the drugs were never found. *Chapman v. State*, 36 So. 3d 822, 824-26 (Fla. Dist. Ct. App. 2010). Another defendant's conviction was upheld when he tried to hide his drugs in one pocket of a billiards table. *Taylor v. State*, 581 S.E.2d 386, 388 (Ga. Ct. App. 2003).

Conversely, in other drug cases involving alleged concealment, courts have found mere abandonment when a defendant hides drugs in his socks[16] or in his pocket,[17] tosses

---

[14]*State v. Clay*, 724 A.2d 1134, 1136 (Conn. App. Ct. 1999); *People v. Brake*, 783 N.E.2d 1084, 1086-87 (Ill. App. Ct. 2003).

[15]*McCray v. State*, No. 469, 2010, 2011 WL 497197, at *4-5 (Del. 2011); *cf. Williams v. State*, 576 S.E.2d 647, 648-49 (Ga. Ct. App. 2003) (defendant unsuccessfully flushed his incriminating underpants down a toilet in the police station).

[16]*State v. Fuqua*, 696 A.2d at 47-48.

[17]*Cornelius v. Commonwealth*, 362 S.W.3d 382, 385 (Ky. Ct. App. 2012).

drugs onto the roof of a garage while being pursued,[18] drops drugs off a roof in view of police,[19] or throws drug evidence over a wooden privacy fence while officers are in pursuit.[20] Dropping a marijuana cigarette into a sewer is mere abandonment,[21] but dropping soluble drugs down a sewer drain could make them irretrievable and could support a tampering conviction.[22] Hiding drugs in one's mouth without successfully swallowing them also may not constitute tampering.[23]

In *State v. Lasu*, 768 N.W.2d 447 (Neb. 2009), the defendant walked through a service station, followed by an officer. While the defendant rounded a corner, he dropped his bag of marijuana into a large bin full of packaged snack foods. The defendant made no effort to cover the drugs. When the officer walked by, he saw the drugs sitting in the bin and retrieved them. *State v. Lasu*, 768 N.W.2d at 449-50. The Nebraska Supreme Court found that this act was mere abandonment because the defendant did not discard the evidence in a place "where it was unlikely to be discovered." Instead, he "placed the evidence where it was quite likely to be discovered, even if he hoped that it might be less associated with him. . . . All [the defendant] attempted to conceal was the fact of his possession of the evidence – not the evidence itself." *State v. Lasu*, 768 N.W.2d at 452.

In weapons cases, one court has held it to be mere abandonment when the defendant tossed a gun out of a moving car while officers were in pursuit. *Anderson v. State*, 123 P.3d at 1118-19 (noting that driving away from the scene with the gun in the car is not tampering by concealment, but throwing the gun from the car could constitute tampering by concealment if it made the gun substantially more difficult to recover).[24] Another court has found that when a defendant fled on foot from the crime scene and took the gun, which was never found, this failed to support a conviction for tampering by removal:

---

[18]*Commonwealth v. Delgado*, 679 A.2d 223, 225 (Pa. 1996).

[19]*In re M.F.*, 734 N.E.2d 171, 178-79 (Ill. App. Ct. 2000).

[20]*People v. Comage*, 946 N.E.2d 313, 319-20 (Ill. 2011).

[21]*People v. Vargas*, 684 N.Y.S.2d 848, 851 (N.Y. Crim. Ct. 1998).

[22]*State v. Logan*, 973 S.W.2d 279, 281-82 (Tenn. Crim. App. 1998).

[23]*Harris v. State*, 991 A.2d 1135, 1143 (Del. 2010); *Morris v. State*, 989 So. 2d 753, 754 (Fla. Dist. Ct. App. 2008); *Hollingsworth v. State*, 15 S.W.3d 586, 595 (Tex. App. 2000).

[24]In *State v. Foreshaw*, 572 A.2d 1006, 1012 (Conn. 1990), and *State v. Harley*, 1999 UT App 197, ¶12, 982 P.2d 1145, 1146-48, the appellate courts upheld the tampering convictions of defendants who threw weapons out of a moving vehicle while fleeing the crime scene. Both jurisdictions, however, include the word "removes" in the *actus reus* portion of their tampering statutes. *See* Conn. Gen. Stat. Ann. § 53a-155; Utah Code Ann. § 76-8-510.5.

> [W]alking away from the scene with the gun is not enough to
> support a tampering charge without evidence of some additional
> act demonstrating an intent to conceal.

> \* \* \*

> When a crime takes place, it will almost always be the case that
> the perpetrator leaves the scene with evidence. If this amounted
> to a charge of tampering, the result would be an impermissible
> "piling on."

*Mullins v. Commonwealth*, 350 S.W.3d 434, 442-43 (Ky. 2011). In another weapons case, the court suggested that the juvenile defendant's act of tossing a gun over a privacy fence during a police chase did not constitute tampering but found that subsequently hiding the gun's holster under a bed did support a tampering conviction because there had been "a break in the action." *Y.J. v. State*, 130 P.3d 954, 958 (Alaska Ct. App. 2006).

In other weapons cases, courts have upheld tampering convictions when the defendant threw a knife over a building while fleeing the scene of a stabbing;[25] when the defendant hid his gun in the crawl space under a house;[26] when the defendant threw his gun near a car while fleeing the scene of a shooting;[27] when the defendant hid the gun behind a dresser in his bedroom;[28] when the defendant hid the gun under a mattress behind a barn;[29] when the defendant hid the gun in some bushes and told police it was somewhere else; [30] when the defendant had an accomplice throw the gun away in a wooded area;[31] when the defendant jettisoned the gun next to a road where it was found, partially rusted, ten days later by

---

[25]*Adams v. State*, No. A-9612, 2008 WL 1914340, at \*5-6 (Alaska Ct. App. Apr. 30, 2008).

[26]*Williams v. State*, 582 S.E.2d 556, 557-58 (Ga. Ct. App. 2003).

[27]*McGoffney v. Commonwealth*, No. 2001-SC-0353-MR, 2003 WL 22430268, at \*10-11 (Ky. Oct. 23, 2003).

[28]*Reyes v. Commonwealth*, No. 2002-SC-0600-MR, 2003 WL 22415616, at \*2-3 (Ky. Oct. 23, 2003).

[29]*Towe v. Commonwealth*, No. 2006-SC-000644, 2007 WL 2404506, at \*2 (Ky. Aug. 23, 2007) (per curiam).

[30]*Pinkston v. Commonwealth*, No. 2010-CA-001963-MR, 2012 WL 411714, at \*2 (Ky. Ct. App. Feb. 10, 2012).

[31]*Hampton v. State*, 713 S.E.2d 851, 854 (Ga. 2011).

highway workers;[32] and when the defendant threw bullet casings down a storm drain.[33]  In one recent case, a divided court upheld the defendant's convictions for tampering when the defendant dropped a stolen handgun near a fence outside his residence.  *Gaitan v. State*, 393 S.W.3d 400, 402 (Tex. Ct. App. 2012), *perm. app. denied* (Tex. Mar. 27, 2013).

**D.**

The facts of this case are unique.  In the heat of the moment, shortly after firing the fatal shot, Mr. Hawkins tossed his shotgun over a fence.  He did not immediately leave the crime scene.  The fence was short and easy to see through.  Nothing actually covered the weapon.  Had the area been well-lit, the gun would have been easily seen, especially against the snow that lightly covered the ground.  The police appear to have found the shotgun rather quickly, and the shotgun itself as well as the DNA evidence found on the shotgun were successfully produced as evidence against Mr. Hawkins at his trial.

The State argues that Mr. Hawkins succeeded in concealing evidence because, by tossing the gun into a somewhat out-of-the-way place, Mr. Hawkins was able to tell the police that he had no weapon and, therefore, was allowed to leave the scene of the crime. We are not convinced that this satisfies the elements of the crime as it is defined in Tenn. Code Ann. § 39-16-503(a)(1).  On one hand, if Mr. Hawkins had simply dropped the shotgun at the place where he fired it and then ran around the Fun Center like he did, he still could have left the scene in the same manner and would much more clearly have simply abandoned the evidence.  On the other hand, Mr. Hawkins could also have hidden the shotgun in his pants and left the scene with the murder weapon.[34]  Thereafter, he would have been free to hide, alter, or destroy the weapon.  By leaving the shotgun out in the open near the crime scene, Mr. Hawkins did not materially impede the investigation or cause the gun to lose any of its evidentiary value.

More precisely, Mr. Hawkins did not "place [the shotgun] out of sight."  If he "prevent[ed] disclosure or recognition of" the gun, he did so only for a brief period of time. *State v. Majors*, 318 S.W.3d at 859.  Like the defendant in *State v. Lasu*, Mr. Hawkins "placed the evidence where it was quite likely to be discovered, even if he hoped that it might

---

[32]*State v. McKimmie*, 756 P.2d 1135, 1139 (Mont. 1988), *overruled on other grounds by State v. Rothacher*, 901 P.2d 82, 86 (Mont. 1995).

[33]*Commonwealth v. Nourse*, 177 S.W.3d 691, 698-99 (Ky. 2005).

[34]At trial, Everett Conley, one of Mr. Hawkins's friends, testified that Mr. Hawkins had demonstrated to him how he was able to conceal the shotgun inside his blue jeans and walk around with the gun completely hidden.

be less associated with him. . . . All [Mr. Hawkins] attempted to conceal was the fact of his possession of the evidence – not the evidence itself." *See State v. Lasu*, 768 N.W.2d at 452.

Mr. Hawkins's act of jettisoning his shotgun does not clearly fall within the definition of the statute. Because Mr. Hawkins's actions arguably did not "conceal" the shotgun within the meaning of Tenn. Code Ann. § 39-16-503(a)(1), the rule of lenity weighs in favor of interpreting the statute narrowly in the defendant's favor. *See State v. Blouvett*, 904 S.W.2d 111, 113 (Tenn. 1995); *State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993); *Key v. State,* 563 S.W.2d 184, 188 (Tenn. 1978); *cf. United States v. Santos*, 553 U.S. 507, 514 (2008); *United States v. Galaviz*, 645 F.3d 347, 361-62 (6th Cir. 2011). The rule of lenity is

> rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his or her conduct is prohibited. To ensure that a legislature speaks with special clarity when marking the boundaries of criminal conduct, courts must decline to impose punishments for actions that are not plainly and unmistakably proscribed.

*State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010) (internal citations, alterations, and quotation marks omitted).

We hold that when Mr. Hawkins tossed the murder weapon into a location adjacent to the crime scene, where it lay in plain view and was easily found, Mr. Hawkins did not conceal the weapon within the meaning of Tenn. Code Ann. § 39-16-503(a)(1). The evidence was not altered or destroyed, and its discovery was delayed minimally, if at all. The shotgun retained its full evidentiary value. Under our definition of concealment, the State's evidence fails to prove beyond a reasonable doubt that Mr. Hawkins "prevent[ed] disclosure or recognition of" the shotgun or placed it "out of sight." *State v. Majors*, 318 S.W.3d at 859. Under our plain reading of the statute, no reasonable jury could have found Mr. Hawkins guilty of tampering with physical evidence.[35]

Our holding, based on the text of Tenn. Code Ann. § 39-16-503(a)(1), is consistent with the results reached in other jurisdictions that have adopted the previously-discussed "abandonment" defense to evidence tampering. *See*, *e.g.*, *Anderson v. State*, 123 P.3d at 1119 (holding that tossing away evidence constitutes evidence tampering only when the evidence is destroyed or its recovery is made "substantially more difficult or impossible");

---

[35]Although the jury was instructed on both tampering and attempted tampering, the parties have not addressed the potential issue of whether Mr. Hawkins could have been found guilty of the lesser-included offense of attempted tampering with evidence under Tenn. Code Ann. § 39-12-101 (2010).

*Harris v. State*, 991 A.2d at 1138 (defining "abandonment" as a failed attempt at concealment that leaves the evidence "visible and immediately retrievable" (quoting *Pennewell v. State*, 977 A.2d 800, 803 (Del. 2009))); *In re M.F.*, 734 N.E.2d at 178-79 (holding that tampering by concealment occurs only when the act was likely either to destroy the evidence or make its recovery less likely); *People v. Comage*, 946 N.E.2d at 319 (holding that tampering by concealment requires that the defendant "materially impede the investigation"); *Mullins v. Commonwealth*, 350 S.W.3d at 443-44 (overturning a tampering conviction because pocketing the gun and leaving the scene was "merely tangential to the continuation of" the underlying crime); *State v. Jones*, 983 So. 2d at 100 ("[In jurisdictions using a version of the Model Penal Code's tampering statute, i]t has only been in cases where the defendant did something to impair the evidence's integrity, veracity, or availability at trial that courts have found the defendant guilty of [tampering].").  We see no need to adopt a standalone abandonment doctrine.  If the evidence is not actually altered, concealed, or destroyed under the definitions we have provided, then the application of a separate abandonment doctrine would be redundant.

## IV.

We reverse Mr. Hawkins's conviction for tampering with physical evidence.  The State's evidence does not establish beyond a reasonable doubt that Mr. Hawkins "concealed" the murder weapon within the meaning of the statute.  Regarding Mr. Hawkins's conviction for first degree murder, we find no error in the trial court's refusal to provide the jury with an instruction on defense of a third person.  The decision of the Court of Criminal Appeals is reversed in part and affirmed in part.  Because Mr. Hawkins appears indigent, we assess the costs of this appeal to the State of Tennessee.

_____
WILLIAM C. KOCH, JR., JUSTICE