IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 5, 2019

**STATE OF TENNESSEE v. CEDRIC DANTE HARRIS**

**Appeal from the Circuit Court for Carroll County**
**No. 17-CR-23       Donald E. Parish, Judge**

_____

**No. W2018-01571-CCA-R3-CD**

_____

Defendant, Cedric Dante Harris, was convicted of possession of 0.5 grams or more of methamphetamine with intent to deliver, simple possession of marijuana, and tampering with evidence. He appeals, arguing that the evidence was insufficient to support his convictions. After carefully reviewing the record, we conclude that the evidence was sufficient. Accordingly, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Guy T. Wilkinson, District Public Defender; Billy R. Roe, Assistant District Public Defender, for the appellant, Cedric Dante Harris.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Michael F. Stowe, District Attorney General; and James B. Webb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Procedural History and Factual Summary*

Defendant was indicted for one count of possession of 0.5 grams or more of methamphetamine with intent to deliver, one count of simple possession of marijuana, one count of tampering with evidence, one count of unlawful possession of a weapon, and one count of possession of a firearm during the commission of a dangerous felony. Defendant proceeded to trial, during which the following facts were adduced.

On October 28, 2016, the 24th Judicial District Drug Task Force executed an arrest warrant for Bobby Joe Kemp, Jr. Upon reaching the address in Huntingdon, Tennessee listed on the warrant, Agent Jason Caldwell knocked on the front door. They were informed by the occupant of the residence, Tyler Moore, that Mr. Kemp did not live there. Shortly after this conversation transpired, two members of the task force, including United States Marshal Shane Brown, entered the home through the back door. Marshal Brown breached the back door of the house after he tried and failed to receive confirmation that the officers at the front door had entered the residence. Marshal Brown heard commotion and a toilet flushing within the house. Marshal Brown described the movement he heard inside the house as "[h]urried . . . like stomping, running." Once he entered the house, Marshal Brown encountered Defendant in the kitchen "trying to come out the back." Defendant gave Marshal Brown permission to search the house for Mr. Kemp.

Authorities searched the house room-by-room. During this sweep of the house, the officers came across a set of digital scales in the kitchen. In the bathroom, connected to the rear bedroom, they found 5.12 grams of marijuana and a clear bag containing 3.45 grams of a crystal substance that tested positive for methamphetamine inside of the toilet. Agent Caldwell and Tim Meggs, the director of the task force, testified that the amount of methamphetamine recovered along with the other evidence collected implied Defendant was a dealer rather than simply a user.

The officers found a debit card with Defendant's name on it. They also found clothing that the officers concluded belonged to Defendant in the rear bedroom. They determined they were Defendant's clothes because they were for a "heavier individual." The articles of clothing did not appear to fit Mr. Moore's body type. When the officers searched Defendant, they found $2100 on him in "multiple denominations." A .22 caliber rifle was also found underneath a couch in the living room, but there was no ammunition found in the house.

Chief Deputy David Bunn of the Carroll County Sheriff's Office arrived at the house after the initial search for Mr. Kemp and gathered information needed to show probable cause in order to get a search warrant for the front bedroom. After obtaining a search warrant, Deputy Bunn returned to the house where the officers located more digital scales in the front bedroom.

Mr. Moore testified on behalf of Defendant that all the drugs found in the house as well as the scales and rifle belonged to him. He also attempted to take credit for flushing the drugs in the toilet, claiming he flushed "two or three bags of a very similar amount" of methamphetamine in the toilet prior to dumping the drugs that were recovered by the officers into the toilet. He further stated that Defendant did not live in the house and was

just meeting him there to get a ride to work. Mr. Moore admitted to being a drug dealer and methamphetamine user.

At the conclusion of the testimony, the jury found Defendant guilty of possession of 0.5 grams or more of methamphetamine with intent to deliver, simple possession of marijuana, and tampering with evidence. The jury also found Defendant not guilty of the two gun charges. At a June 11, 2018 sentencing hearing, the trial court sentenced Defendant to an effective thirteen-year sentence, as a Range II, Multiple, Offender. After a denial of a motion for a new trial, Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant challenges the sufficiency of the evidence. Specifically, Defendant argues the evidence does not support the jury's finding that he constructively possessed the drugs found and that he tampered with evidence. The State maintains that the evidence presented at trial is sufficient to support the jury's verdicts that Defendant was in possession of 0.5 grams or more of methamphetamine with intent to deliver and possession of marijuana. Further, the State argues that the evidence is sufficient to support the jury's verdict that Defendant is guilty of tampering with evidence.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

*Possession of Methamphetamine and Marijuana*

Defendant argues that the State failed to show he had constructive possession of the drugs. As applicable to this case, possession with intent to deliver is defined as "knowingly possess[ing] methamphetamine with intent to manufacture, deliver, or sell methamphetamine." T.C.A. § 39-17-434(a)(4). Simple possession is likewise defined as "knowingly possess[ing] or casually exchang[ing] a controlled substance." T.C.A. § 39-17-418(a). A person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b). The "intent" element of the statutes may be inferred "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." T.C.A. § 39-17-419.

The term "possession," as used in the statute, embraces both actual and constructive possession. *See State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981); *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others." *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001) (quoting *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). Likewise, an individual's mere association with a person who does in fact control the drugs or property where the drugs are discovered is also insufficient to support a finding that the person possessed the drugs. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987); *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013). However, constructive possession is determined on a case by case basis by the totality of the circumstances and can be proven by circumstantial evidence. *Robinson*, 400 S.W.3d at 534.

When viewed in the light most favorable to the State, the foregoing facts establish that Defendant was in constructive possession of methamphetamine as well as marijuana. Moments after Agent Caldwell knocked at the door and was greeted by Mr. Moore, the agents at the back of the house heard the flushing of the toilet and the "hurried movements" that prompted their forced entry. Agent Caldwell testified that to the best of his knowledge, the answering of the door by Mr. Moore and the flushing of the toilet happened simultaneously. Mr. Moore and Defendant were the only two people inside the house, leaving Defendant as the person in possession of the drugs that were being flushed. Further, numerous agents testified to locating scales in plain sight, and this fact

could lead a reasonable juror to determine that Defendant had knowledge of the drugs. Lastly, the agents located Defendant's clothes and debit card in the house, furthering the proof that Defendant was not only aware of the drugs but that he was in possession of them as well. Taken together, these facts are sufficient for a rational trier of fact to find that Defendant constructively possessed the drugs found in Mr. Moore's house. These facts, along with the amount of drugs found and the $2100 located on Defendant's person, support the finding that Defendant had the intent to deliver methamphetamine. Under these circumstances, we conclude that a rational juror could infer that Defendant was in constructive possession of the controlled substances and that the evidence was sufficient to support his conviction of possession of 0.5 grams or more of methamphetamine with intent to deliver as well as simple possession of marijuana. Defendant is not entitled to relief.

*Tampering with Evidence*

Defendant next challenges the sufficiency of the evidence as it relates to his conviction for tampering with the evidence. As applicable to this case, tampering with evidence occurs when a person knows an investigation is in progress and proceeds to "[a]lter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding." T.C.A. § 39-16-503(a)(1).

In order to establish that Defendant tampered with the evidence, the State had to prove three elements beyond a reasonable doubt—"timing, action, and intent." *State v. Hawkins*, 406 S.W.3d 121, 132 (Tenn. 2013) (quoting *State v. Gonzales*, 2 P.3d 954, 957 (Utah Ct. App. 2000)). "The 'timing' element requires that the act be done only after the defendant forms a belief that an investigation or proceeding 'is pending or in progress.'" *Id.*; *see State v. Smith*, 436 S.W.3d 751, 763 (Tenn. 2014). "The 'action' element requires alteration, destruction, or concealment." *Hawkins*, 406 S.W.3d at 132. To "alter" a thing means "to make different without changing into something else." *Id.* (quoting *State v. Majors*, 318 S.W.3d 850, 859 (Tenn. 2010)). To establish the "intent" element, the proof must show that the defendant intended for his actions "to hinder the investigation or official proceeding by impairing the record's, document's, or thing's 'verity, legibility, or availability as evidence.'" *Id.* (quoting T.C.A. § 39-16-503(a)(1)). Accordingly, the State was required to prove beyond a reasonable doubt that Defendant intentionally destroyed, altered, or concealed controlled substances by flushing them in the toilet with intent to impair their value as evidence.

When viewed in the light most favorable to the State, the evidence is sufficient to support Defendant's conviction for tampering with the evidence. As stated above, Agent Caldwell's testimony implies that Defendant would have been the only one in the house capable of attempting to flush the drugs in the toilet. This evidence is enough to establish

the "timing" element because the attempted disposal of the drugs happened after Defendant was put on notice of the agents' arrival. These actions also sufficiently display Defendant's "intent" to hinder the investigation by disposing of the evidence. To establish "action," however, a reasonable juror had to be able to find beyond a reasonable doubt that some of the drugs made it down the commode and, thus, that the evidence was actually destroyed, altered, or concealed. Mr. Moore's testimony that he flushed two bags in the toilet before failing to flush the third bag implies that there were more drugs in the house than what were discovered. While the jury obviously did not believe Mr. Moore's testimony that he was the one who did the flushing, the testimony does provide evidence establishing "action" and making the jurors' conviction reasonable. The jury is entitled to accredit part of a witness's testimony and discredit other testimony from that same witness. *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). Under these circumstances, we conclude that a rational juror could infer that Defendant intended to impair the drugs' verity, legibility, or availability as evidence and that the evidence is sufficient to support his conviction for tampering with the evidence. Defendant is not entitled to relief on this issue.

*Conclusion*

Based upon the foregoing reasons, the judgments of the trial court are affirmed.

_____
TIMOTHY L. EASTER, JUDGE