IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 19, 2013 Session

**STATE OF TENNESSEE v. WALTER FRANCIS FITZPATRICK, III**

**Appeal from the Criminal Court for Monroe County**
**No. 12108-CRM    Walter C. Kurtz, Judge**

_____

**No. E2013-00456-CCA-R3-CD - Filed April 11, 2014**

_____

Appellant, Walter Francis Fitzpatrick, III, was indicted by the Monroe County Grand Jury for one count of tampering with government records. After a jury trial, Appellant was convicted as charged and sentenced to eleven months and twenty-nine days with twenty days to serve in incarceration and the remainder to be served on probation. Appellant appeals his conviction. He argues that his indictment was faulty because the grand jury foreperson was not eligible to serve; that the trial court erred in ruling that Appellant could not testify regarding his proposed defense of necessity; and that the trial court erred in denying Appellant's request for a jury instruction on the defense of necessity. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Trial Court are Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, SP. J., and D. KELLY THOMAS, JR., J., joined.

Van R. Irion, Knoxville, Tennessee, for the appellant, Walter Francis Firzpatrick, III.

Robert E. Cooper, Jr., Attorney General and Reporter; Kyle Hixson, Assistant Attorney General; Steven Bebb, District Attorney General; and Paul D. Rush, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Appellant began his contentious relationship with the Monroe County court system in 2009. In that year, Appellant sought an indictment against President Barack Obama for treason. He was given the proper paperwork by Martha M. Cook, the Monroe County Circuit

Clerk. Appellant appeared in front of the Monroe County Grand Jury, but the grand jury chose not to indict President Obama.

After the failure to obtain an indictment, Appellant began to aggressively investigate the jury selection process in Monroe County. He would visit the Circuit Court Clerk's Office once or twice a month and request jury selection records. Appellant recorded his conversations with Ms. Cook on these occasions. His relationship with Ms. Cook became contentious because he did not always get the answers he wanted.

On December 7, 2011, Appellant sat in the courtroom while the petit and grand juries were being impaneled. The clerk's office had sent personal information sheets to the potential jurors. The jurors had been instructed to bring the sheets with them. Appellant asked one of the jurors, James D. Kirk, to see the personal information sheet. He gave Appellant the form, and Appellant took notes on the questions included on the forms.

The information forms were collected and given to the trial judge. The judge proceeded to pick two, eighteen-juror panels for the grand jury. Ms. Cook gave the sheets to Renay Ezell, a deputy clerk. The grand jurors were taken to the chancery courtroom. Appellant accompanied them. Ms. Ezell placed the information forms and packets of information for the jurors on a table in the courtroom.

The judge subsequently asked the jurors to return to a courtroom upstairs. When Appellant tried to go upstairs with the jurors, he was stopped by an officer. Appellant returned to the chancery courtroom. He saw the juror information forms laying on the table. He walked up to the table, took the forms and left. His actions were captured on the security camera in the courtroom.

Ms. Ezell returned to the courtroom and realized that the forms were missing. She was very concerned because the documents that had been taken were the original documents and without them she did not know who had been selected for the grand jury. She reported the missing documents to Ms. Cook, and Ms. Cook asked to see the surveillance footage. She readily identified Appellant as the individual who took the documents.

Ms. Cook called Appellant regarding the missing documents. However, she was unsuccessful. Officers with the Monroe County Sheriff's Department went to Appellant's house to no avail. They left a note asking Appellant to return the documents. On December 7, 2011, Appellant's landlord saw Appellant walking in a snow-covered field behind her house. She asked why he was walking in the snowy field, and he responded that the police were nearby and most likely looking for him. He told her that he had something that belonged to them.

Later that day, officers obtained both search and arrest warrants. They searched Appellant's home in an attempt to locate the missing documents. The search did not result in the discovery of the documents, but officers did recover Appellant's handwritten notes from the day he spent at court.

Detective Conway Mason with the Monroe County Sheriff's Department was involved in the investigation of the case. He discovered the missing documents posted on a government-conspiracy website known as "Post and Email." The website is run by Sharon Rondeau who resides in Connecticut. With the help of the Federal Bureau of Investigation ("FBI"), the Monroe County Sheriff's Office obtained two United States Postal Service envelopes mailed to Ms. Rondeau from Appellant. The two envelopes contained the jury information sheets and the jury selection pamphlets taken by Appellant.

Appellant testified at trial. He admitted that he took the documents in question. He agreed that the courtroom was empty when he did so. He also stated that he did not think it was illegal for him to take the documents.

The Monroe County Grand Jury indicted Appellant for tampering with governmental records pursuant to Tennessee Code Annotated section 39-16-504. On December 3, 2012, a jury found Appellant guilty as charged. The trial court sentenced Appellant to eleven months and twenty-nine days. His sentence was suspended after the service of twenty days with the remainder to be served on probation. Appellant appeals his conviction.

## ANALYSIS

### Appellant's Motion to Dismiss

Appellant argues that the trial court erred in denying his request to dismiss his indictment because the grand jury foreperson had "illegally served on successive grand juries."

Prior to trial, Appellant filed a motion in which he alleged that his indictment was "counterfeit" because the grand jury foreperson had served a jury in the previous calendar year, 2011. The trial court heard this motion on June 28, 2012, and made the following findings in a written order:

> Defendant asserts that the grand jury foreperson has illegally served on successive grand juries. Tennessee law, however, is clear that a foreperson may serve on successive grand juries and is not limited to one term. *See*

-3-

*Nelson v. State*, 499 S.W.2d 956, 956 (Tenn. Crim. App. 1972) and *Thompson v. State*, 2005 WL 2546913, *25 (Tenn. Crim. App. 2005). *See also* Raybin, Tennessee Criminal Practice & Procedure, § 9.8 (2008) (selection of grand jury foreperson).

Furthermore, the trial court held another hearing on October 3, 2012, and reconsidered Appellant's motion to dismiss. The trial court stated in its written order that it was relying upon its "reasons stated orally by the Court" to deny Appellant's motions.

Appellant failed to include transcripts of the hearings in which the trial court heard evidence and arguments in order to determine this issue. Furthermore, in the trial court's second order, the trial court referenced its oral findings stated in the hearing culminating in the denial of Appellant's motion.

Pursuant to the Rules of Appellate Procedure, the Appellant is responsible for procuring the relevant transcripts and filing them within sixty days of the notice of appeal or notifying the trial court clerk that no transcript will be filed. Tenn. R. App. P. 24(b). Moreover, the Appellant is responsible for ensuring that a complete and adequate record is prepared and transmitted on appeal. *See, e.g., State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). If an incomplete record is presented to this Court, the Appellant risks waiving issues raised on appeal. *See, e.g., State v. Cindy L. Holder*, No. E2000-01191-CCA-R3-CD, 2003 WL 367244 (Tenn. Crim. App., at Jackson, Feb. 21, 2003); *State v. Roger Stephen Riner*, No. M2009-00579-CCA-R3-CD, 2010 WL 3719168, at *4-5 (Tenn. Crim. App., at Nashville, Sept. 23, 2010), *perm. app. denied*, (Tenn. Feb. 17, 2011). For this reason, this issue is waived. Moreover, it appears from the limited record before us that the trial court's denial of the motion to dismiss was correct under the law.

## Necessity Defense

Appellant also argues that the trial court erred in refusing to allow him to testify regarding his intended defense of necessity and erred in refusing to instruct the jury on the defense of necessity.

### Trial Court's Refusal to Allow Testimony

Appellant argues that the trial court erred in denying him permission to testify at trial that: (1) "an FBI agent had instructed [Appellant] to obtain tangible evidence like the documents that the defendant was accused of unlawfully removing"; (2) "the documents at issue were evidence of illegal jury selection practices by the Monroe County Criminal

Court"; and (3) "he believed that the documents at issue would have been destroyed if he had not removed them." He argues that he "was completely prohibited from discussing any of the facts that would have supported his defense of necessity."

The Tennessee Rules of Evidence embody, and our courts traditionally have acknowledged, "a policy of liberality in the admission of evidence in both civil and criminal cases . . . ." *State v. Banks*, 564 S.W.2d 947, 949 (Tenn. 1978); *see also State v. Robinson*, 930 S.W.2d 78, 84 (Tenn. Crim. App. 1995). To be admissible, evidence must satisfy the threshold determination of relevancy mandated by Rule 401 of the Tennessee Rules of Evidence. *See, e.g., Banks*, 564 S.W.2d at 949. Rule 401 defines "relevant evidence" as being "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. However, relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Tenn. R. Evid. 403; *see also Banks*, 564 S.W.2d at 951.

Generally, the admission of evidence is a matter left to the discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008). "An abuse of discretion occurs when the trial court applies an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" *State v. Dotson*, 254 S.W.3d 378, 392 (Tenn. 2008) (quoting *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006)).

At trial, out of the hearing of the jury, Appellant made an offer of proof as to what Appellant would testify regarding his proposed necessity defense. The trial court made the following ruling:

> The State's objection is sustained. This is not a description of defense of necessity or justification. The defense of necessity justification does not turn vigilantes loose to patrol the jury selection process.

> And, yes, there are sometimes mistakes made in the jury selection process, i.e., racial discrimination, perhaps favoritism and the like, and our appellate decisions are full of decisions that either – that – that deal with those issues.

> The defense of necessity doesn't allow somebody to purloin an official government record. So this objection is sustained.

Now, [Appellant] can certainly testify that he was interested in the process of jury selection. He was concerned about it, and that's why – what peaked his interest to – to be there. But that's as far as he can go.

The defense of necessity is available when:

(1) the person reasonably believes the conduct is immediately necessary to avoid imminent harm; and

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct.

T.C.A. § 39-11-609.

The Sentencing Commission Comments to the section also state the following:

This section codifies the common law defense of necessity. It excuses the criminal liability in those situations where criminal activity is an objectively reasonable response to an extreme situation. For example, the necessity defense would bar a trespass conviction for a hiker, stranded in a snowstorm, who spends the night in a vacant cabin rather than risking death sleeping in the open.

The defense is limited to situations: (1) where the defendant acts upon a reasonable belief that the action is necessary to avoid harm; and (2) where the harm sought to be avoided is clearly greater than the harm caused by the criminal act.

T.C.A. § 39-11-609, Sent. Comm'n Cmts.

Under this section, conduct which would ordinarily be criminal is justified if the accused reasonably believes that the conduct is necessary to avoid imminent harm. Put differently, the defense of necessity excuses criminal liability in those exceedingly rare situations where criminal activity is an objectively reasonable response to an extreme

situation. T.C.A. § 39-11-609, Sent. Comm'n Cmts. This Court has provided examples of exceedingly rare situations where a necessity defense is applicable, including a ship violating an embargo law to avoid a storm and a pharmacist providing medication without a prescription to alleviate someone's suffering during an emergency. *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing 11 David Raybin, Tennessee Practice § 28.118 (1985 & Supp. 1997)). To be entitled to the defense of necessity, Appellant must show an immediately necessary action, justifiable because of an imminent threat, where the action is the only means to avoid the harm. *State v. Green*, 915 S.W.2d 827, 832 (Tenn. Crim. App. 1995).

In *State v. Green*, 995 S.W.2d 591 (Tenn. Crim. App. 1998), perm. app. denied, (Tenn. Apr. 12, 1999), this Court examined the difference between the defenses of duress and necessity. This analysis is illuminating in terms of the issue in this case. In *Green*, this Court stated the following and quoted the United States Supreme Court in its analysis:

> As is apparent from the above-quoted jury instruction and statutory section, the defenses of duress and necessity are similar both in form and in the policy supporting the availability of both defenses. Given that the sentencing commission comments to the statutory section defining the defense of necessity point out that the section codifies common law, we believe we can look to a common law distinction between the two defenses to aid our resolution of this issue.

> > Common law historically distinguished between the defenses of duress and necessity. Duress was said to excuse criminal conduct where the actor was under an unlawful threat of imminent death or serious bodily injury, which threat caused the actor to engage in conduct violating the literal terms of the criminal law. While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils. Thus, where A destroyed a dike because B threatened to kill him if he did not, A would argue that he acted under duress, whereas if A destroyed the dike in order to protect more valuable property from flooding, A could claim a defense of necessity.

-7-

> *United States v. Bailey*, 444 U.S. 394, 409-10, 100 S. Ct. 624, 634, 62 L. Ed.2d
> 575 (1980).

*Green*, 995 S.W.2d at 606.

Therefore, it appears that necessity usually involves a situation created not by humans but by physical forces.

Based upon both the statutory and common law on the defense of necessity, we conclude that the trial court did not abuse its discretion in sustaining the State's objection regarding Appellant's proffered testimony. Appellant argued in the trial court that his taking of the documents was a necessity because he was told by an FBI agent to get tangible evidence and because he thought the documents would be destroyed. However, as set out above, the defense of necessity has been used in situations where there is a lesser of two evils situation created by some sort of natural force or condition. That situation was clearly not present in the facts at hand.

Therefore, this issue is without merit.

## Trial Court's Refusal to Instruct Jury on Necessity

Appellant also argues that the trial court erred in denying his request for the jury instruction of necessity.

A trial court has a "duty to give a complete charge of the law applicable to the facts of the case." *State v. Harris*, 839 S.W.2d 54, 73 (Tenn. 1992). Anything short of a complete charge denies a defendant his constitutional right to trial by a jury. *State v. McAfee*, 737 S.W.2d 304, 308 (Tenn. Crim. App. 1987). However, Tennessee law does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992). A charge is prejudicial error "if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." *State v. Hodges*, 944 S.W.2d 346, 352 (Tenn. 1997) (citing *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995); *Graham v. State*, 547 S.W.2d 531 (Tenn. 1977)). In determining whether jury instructions are erroneous, this Court must review the charge in its entirety and invalidate the charge only if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998). Furthermore:

The question of whether the facts in a criminal case require the jury to be instructed regarding a particular defense is a mixed question of law and fact. We review these questions de novo, with no presumption of correctness. *See State v. Rogers*, 188 S.W.3d 593, 628-29 (Tenn. 2006); *State v. Thacker*, No. E2011-02401-CCA-R3-CD, 2012 WL 4078440, at *8 (Tenn. Crim. App. Sept. 18, 2012) (No Tenn. R. App. P. 11 application filed). Errors in jury *instructions are generally subject to a "harmless error" analysis. State* v. Williams, 977 S.W.2d 101, 104-05 (Tenn. 1998). However, when the jury instructions mislead the jury as to the applicable law or fail to "fairly submit" the relevant legal issues, such as available defenses, we hold such deficiencies to be prejudicial error. *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998).

*State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013).

Self-defense, necessity and mistake of fact are not affirmative defenses. They are merely defenses; if the evidence fairly raises a defense, the trial court must submit the defense to the jury. If the jury is instructed on the defense of necessity, the State must prove beyond a reasonable doubt that the defense does not apply, or the jury must acquit. T.C.A. §§ 39-11-203, -502, -609, -611; *State v. Bult*, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998); *State v. Culp*, 900 S.W.2d 707, 710 (Tenn. Crim. App. 1994); *State v. McPherson*, 882 S.W.2d 365, 374 (Tenn. Crim. App. 1994).

Our supreme court recently stated the following:

The quantum of proof necessary to fairly raise a general defense is less than that required to establish a proposition by a preponderance of the evidence. To determine whether a general defense has been fairly raised by the proof, a court must consider the evidence in the light most favorable to the defendant and draw all reasonable inferences in the defendant's favor. Whenever admissible evidence fairly raises a general defense, the trial court is required to submit the general defense to the jury. From that point, the burden shifts to the prosecution to prove beyond a reasonable doubt that the defense does not apply. *State v. Bledsoe*, 226 S.W.3d at 355.

*Hawkins*, 406 S.W.3d at 129.

We concluded above that Appellant's proffered evidence was properly excluded by the trial court. When taking the evidence in a light most favorable to Appellant we conclude that there is no basis for an instruction of the defense of necessity. There was no evidence of imminent harm that was prevented by the taking of the documents in question. Appellant argues that he was told to bring in tangible evidence by an FBI agent, but he did not present this agent. Evidence was also presented that the information in the documents would later be published publicly on-line. We conclude that the trial court did not err.

Therefore, this issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JERRY L. SMITH, JUDGE

-10-