IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 03, 2015

## STATE OF TENNESSEE v. TRAVONTAY TREMONT BERRY

**Appeal from the Circuit Court for Madison County**
**No. 13-516     Donald H. Allen, Judge**

_____

**No. W2014-00808-CCA-R3-CD  - Filed April 30, 2015**

_____

A jury convicted the defendant, Travontay Tremont Berry, of tampering with evidence, a Class C felony, and carrying a firearm with the intent to go armed, a Class A misdemeanor. The defendant appeals the sufficiency of the evidence for his felony conviction, arguing that he did not know that an investigation was pending at the time of the offense.  Having reviewed the record, we conclude that the evidence is sufficient to support the convictions, and we affirm the judgment of the trial court.  We remand for correction of the judgment form to reflect the correct classification of the tampering with evidence offense and for reconsideration of the sentence in light of the correction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Case Remanded**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Joseph T. Howell, Jackson, Tennessee, for the appellant, Travontay Tremont Berry.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Jerry Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## FACTUAL AND PROCEDURAL HISTORY

The defendant witnessed a fight at a party in downtown Jackson, fired his weapon in the air, and later disposed of the weapon. The defendant's single shot apparently initiated a volley of gunfire which left two dead and one wounded. The defendant's convictions rest on admissions he made to police on the day of the incident.

The State presented only one witness, Investigator Aubrey Richardson, who interviewed the defendant and took his statement. Investigator Richardson testified that he received a call on April 28, 2013, reporting multiple gunshot victims at a building in downtown Jackson. Police were called to the scene at 3:05 a.m. and found three shooting victims, two of whom ultimately died.

Although the defendant was not a suspect in the homicides, police received information indicating that he had been present, and he was taken into custody[1] and interviewed. Investigator Richardson read a rights waiver form to the defendant, and the defendant signed the form and agreed to talk to law enforcement. Investigator Richardson testified that the defendant at first denied having anything to do with the shooting.

Investigator Richardson had obtained surveillance video from a nearby business which showed the parking lot where the shooting took place. The shooting occurred at nighttime, and Investigator Richardson testified that "you could see the incident take place, but the camera was so far away and poor quality and you really couldn't identify anybody from it." The video "happened to be" in the office and had been cued forward to show the parking lot during the daytime, when the scene was identifiable. The defendant saw the screen, and Investigator Richardson told him that there was a video, although he did not say that the defendant was captured on the recording. After finding out that police had video surveillance of the parking lot, the defendant changed his story and gave the following statement:

> I (Travontay Berry) was at a party last night at the Wolfe Building. It was my cousin's girlfriend's graduation party. I was at the party for a couple of hours. I was wearing a blue shirt with gray sleeves, gray pants, and a blue and red hat. As far as I know, every thing was fine inside the building[;] I never saw a conflict inside. When I got ready to leave, I went outside and was looking for the two people who rode with me, which was my brother, Darri[u]s Berry, and my cousin, Spud. When I went

---

[1]The hearing on the defendant's motion to suppress clarified that the defendant was arrested on an outstanding warrant in an unrelated child support matter.

outside, I saw "Tone," who is my cousin Antonio Bates[,] and "Slamdunk" (Delandis Clark) fighting. Brian Banes, "B," was in the middle of it too, and running his mouth. They were all three in the parking lot, near the exit to Baltimore Street. I went towards them to see what was going on. As I was walking towards them, I shot a gun in the air one time. It was a semi-auto pistol. I am not sure of the caliber, but I pulled the gun from my waistband and shot it. When I shot the gun, there was a pause[;] then someone fired a lot of shots. As I was going to go to my truck, I saw Trouble-shooter (who is my cousin, Anthony Montrell Swift) firing a gun several times in the direction of Slamdunk and Brian Banes. I don't know what the gun looked like, but Trouble-shooter was wearing a purple or blue shirt. Once the shooting was over, I saw Slamdunk and Brian Banes l[]ying on the ground. Other than the shot I fired in the air and the shots I saw [T]rouble-shooter shooting, I didn't see anyone else shooting, nor did I see anyone else with a gun. When the shooting stopped and I saw Slamdunk and Brian on the ground, me and my brother went to my truck and left. I got rid of the gun that I fired[;] it can[]not be found.

The statement was written out by Investigator Richardson, and the defendant was given a chance to read it and make changes. He did not make any changes and indicated that this was the statement he wished to make. A warrant for the defendant's arrest for tampering with evidence and carrying a firearm with the intent to go armed was not issued until May 7, 2013.

Investigator Richardson testified that the defendant admitted that he had a gun and no permit. The gun had not been recovered, and according to Investigator Richardson, it would have been helpful to the investigation. The defendant never gave more information about the location of the gun but simply stated it could not be found.

The defendant called two witnesses who testified that they were with him at the time of the shooting and that he was not involved. Darrius Berry, the defendant's older brother, testified that they were attending his cousin's graduation party on April 28, 2013, in a building that did not permit smoking. Mr. Berry, the defendant, and Shanell Rogers went outside to smoke and began to walk toward their truck to get a lighter. As they were walking, they heard multiple gunshots. The defendant did not possess or shoot a firearm during the incident. Mr. Berry testified he was standing in close proximity to his brother when the shots were fired. After they heard the shots, the defendant and Mr. Berry left in the truck. On

cross-examination, Mr. Berry testified that if there had been a gun in the car, his brother would have told him. He also testified that he had never known his brother to carry a gun.

Shanell Rogers testified that the defendant was a friend of hers and that they were dancing at the graduation party the night of the shooting. Nothing unusual happened at the party. She went outside with the defendant and his brother to light a cigarette, and they heard a gunshot as they were walking to the truck. After the gunfire, they "just scattered." The defendant and his brother got in the truck, and she returned to the building to get her sister. She testified that she was right next to the defendant when she heard the shots and that she never saw him with a gun or shooting a gun. On cross-examination, she testified that she heard "a couple of shots" but did not see a fight or anything else related to the shooting. She was not aware that the defendant had given law enforcement a statement which contradicted her testimony.

The jury found the defendant guilty as charged of tampering with evidence and of carrying a firearm with the intent to go armed. It imposed a fine of $5,000 for the tampering with evidence conviction and a fine of $2,500 for the weapons conviction. The trial court sentenced the defendant as a Range I offender to four years' imprisonment for the felony conviction and 11 months, 29 days' imprisonment for the misdemeanor conviction, to be served consecutively. The defendant's sole issue on appeal is the sufficiency of the evidence for the conviction for tampering with evidence.

**ANALYSIS**

Under Tennessee Rule of Appellate Procedure 13(e), "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." When a court evaluates the sufficiency of the evidence, it must determine whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). This court neither reweighs nor reevaluates the evidence, nor may it substitute its inferences for those drawn by the trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). The jury's guilty verdict, approved by the trial judge, accredits the State's witnesses and resolves all conflicts in favor of the prosecution. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *Bland*, 958 S.W.2d at 659. "On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000). A guilty verdict replaces the presumption of innocence with one of guilt, and on appeal, the

defendant bears the burden of demonstrating that the evidence is insufficient to support the conviction. *State v. Cole*, 155 S.W.3d 885, 897 (Tenn. 2005). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

The defendant argues that the evidence is insufficient to support his conviction for tampering with evidence. As charged in the indictment, Tennessee Code Annotated section 39-16-503 makes it a crime for a person,

> knowing that an investigation or official proceeding is pending
> or in progress, to:
>
> (1) Alter, destroy, or conceal any record, document or thing with
> intent to impair its verity, legibility, or availability as evidence
> in the investigation or official proceeding

T.C.A. § 39-16-503(a) (2010).

The defendant contends that the State failed to show that he knew that an investigation or official proceeding was pending or in progress at the time that he disposed of his gun. Tennessee Code Annotated section 39-16-503 requires the State to prove beyond a reasonable doubt three elements: timing, action, and intent. *State v. Hawkins*, 406 S.W.3d 121, 132 (Tenn. 2013). The defendant does not assert that the evidence is insufficient to support the conclusion that he took the action of concealing or destroying the gun. Neither does he contend that the State failed to prove his intent to impair the weapon's availability as evidence in the homicide investigation. Instead, he argues that the timing element is not met because he did not know than an official proceeding was pending or in progress at the time that he "got rid of" the gun.

"The 'timing' element requires that the act be done only after the defendant forms a belief that an investigation or proceeding 'is pending or in progress.'" *Hawkins*, 406 S.W.3d at 132. The Tennessee Supreme Court recently considered the requirement for the "timing" element and clarified that the word "pending" in Tennessee Code Annotated section 39-16-503(a)is synonymous with "impending," citing with approval a Texas decision that determined that "pending" means "impending or about to take place." *State v. Smith*, 436 S.W.3d 751, 763 (Tenn. 2014) (quoting *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App.

2004)).[2]  In *Smith*, the defendant abandoned his wife's car in a parking lot with plans to report her missing, intending to steer police to the vehicle in order to confuse the investigation. *Smith*, 436 S.W.3d at 765.  The court concluded that evidence that the defendant moved his wife's car prior to reporting her missing was sufficient to sustain his conviction under the statute. *Id.*  This court has upheld convictions in other cases where the defendant had reason to know that an investigation was impending but the investigation was not yet in progress. *See State v. Eric Ricardo Middleton*, No. W2010-01427-CCA-R3-CD, 2011 WL 5573730, at *22 (Tenn. Crim. App. Nov. 14, 2011) (upholding conviction where the defendant orchestrated cleaning up blood and concealing the victims' bodies long before authorities were alerted to the crimes); *State v. Samuel Alan Ireson*, No. E2010-01648-CCA-R3-CD, 2011 WL 2410322, *6 (Tenn. Crim. App. June 10, 2011) (upholding conviction where the evidence supported the conclusion that the defendant had planted a knife on the victim contemporaneously with the crime and around the time of the 911 call).

Here, the defendant fired his weapon into the air when he witnessed a fight.  This initial shot set off a volley of gunfire which ultimately left two dead and one wounded.  The defendant indicated in his statement that he saw two of the victims lying on the ground as he left and subsequently "got rid of" his gun at some point between the 3 a.m. shooting and his arrest on an outstanding warrant the following afternoon.  The circumstances of the homicides, including the fact that the defendant fired the initial shot into the air, witnessed the subsequent gunfire, saw two individuals lying on the ground as he fled, and immediately disposed of the weapon, warrant a rational trier of fact in drawing the reasonable inference that the defendant knew that an investigation into the shooting of the two victims was impending when he disposed of his weapon.  Accordingly, the evidence is sufficient to uphold the verdict.

The defendant's statement to police that he kept a loaded weapon in the waistband of his pants and fired it in the air in a public garage where three men were fighting is sufficient to support his conviction for carrying a firearm with the intent to go armed, as the element of intent may be proven by the circumstances surrounding the carrying of the weapon. T.C.A. § 39-17-1307(a)(1), (a)(2)(C); *Cole v. State*, 539 S.W.2d 46, 49 (Tenn. Crim. App. 1976).

We note that a violation of T.C.A. § 39-16-503 prohibiting tampering with evidence is a Class C felony.  The judgment form indicates that the defendant was convicted of tampering with evidence under Tennessee Code Annotated section 39-16-503, but the

---

[2] Accordingly, we conclude that *Smith* clarifies that the investigation need not be "ongoing" at the time of the tampering but merely "impending." *See Smith*, 436 S.W.3d at 763; *compare State v. Majors*, 318 S.W.3d 850, 858 (Tenn. 2010).

judgment form classifies the crime as a Class D felony. The sentencing hearing likewise reflects the parties' understanding that the crime was a Class D felony. A Range I sentence for a Class C felony is not less than three nor more than six years; a Range I sentence for a Class D felony is not less than two nor more than four years. T.C.A. § 40-35-112(a)(3), (4). The defendant was sentenced as a Range I offender for a Class D felony to four years' imprisonment. Accordingly, his sentence is within range for either a Class C or a Class D felony. We remand to the trial court for correction of the judgment forms. We also remand to allow the trial court to reconsider the sentence in light of the proper classification and to make any changes to the within-range sentence, should it choose to do so.

## CONCLUSION

Based on the foregoing, we affirm the defendant's convictions and remand for further proceedings in light of this opinion.

_____
JOHN EVERETT WILLIAMS, JUDGE