FILED

04/13/2017

Clerk of the
Appellate Courts



IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 7, 2017

## STATE OF TENNESSEE v. MORIARCO MONTRELL LEE

**Appeal from the Circuit Court for Madison County**
**No. 14-522    Kyle Atkins, Judge**
_____

### No. W2016-01391-CCA-R3-CD
_____

The Defendant, Moriarco Montrell Lee, and his co-defendant, Dequevion Lamar Lee, were indicted by a Madison County Grand Jury for attempted first degree murder and aggravated assault. Following a jury trial, the Defendant was convicted as charged, and the trial court merged the aggravated assault conviction into the attempted first degree murder conviction and sentenced the Defendant to twenty-two years to be served in the Tennessee Department of Correction. On appeal, he argues that the evidence is insufficient to sustain his convictions. Upon review, we affirm the judgments of the trial court but remand for entry of a judgment form as to count two reflecting that the Defendant's aggravated assault conviction was merged with count one.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**
**and Remanded for Entry of Corrected Judgment**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and J. ROSS DYER, JJ., joined.

Susan D. Korsnes, Jackson, Tennessee, for the Defendant-Appellant, Moriarco Montrell Lee.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Jerry Woodall, District Attorney General; and Benjamin C. Mayo, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

This case concerns the shooting of the victim, Marketus Hendrix, on December 10, 2013. The Defendant and his co-defendant, Dequevion,[1] were subsequently arrested

---

[1] Because the defendants are family members who share the same last name, we will refer to the co-defendant by his first name for clarity. We intend no disrespect in doing so.

and charged with attempted first degree murder and aggravated assault. Following a jury trial, the Defendant was convicted as charged. As relevant to the issues raised by the Defendant in this appeal, the facts presented at the May 19, 2015 trial were as follows:

Marketus Hendrix testified that, on December 10, 2013, around 3:00 p.m., he drove to a barber shop on Lane Avenue in Jackson, Tennessee. As he exited his car, a person Hendrix knew only as "Yogi" said "B****, you're about to die," and two people began shooting at him. Hendrix recalled that the shooters were not wearing masks and that he immediately recognized them as "Yogi" and "D-Rich." Hendrix stated that "Yogi" was standing "[n]ot too far from where [Hendrix] parked," near the stairs of the barber shop. The second shooter, "D-Rich," was standing behind the barber shop to the left, in front of where Hendrix parked. Hendrix was shot in the chest, abdomen, arm, and leg a total of fourteen times.

Hendrix confirmed that he had marijuana in his possession when he was shot, which he turned over to police. When officers arrived, Hendrix could not speak, but he answered their questions by nodding, and he confirmed that he knew the shooters. Hendrix was in the hospital for twenty-one days following the shooting and, on December 17, 2013, he was interviewed in the Intensive Care Unit by Investigator Al Colon. Hendrix testified that he could speak a little and was able to tell Investigator Colon the names "D-Rich" and "Yogi" and look at photo lineups. Hendrix identified the Defendant as "Yogi" and Dequevion, the Defendant's brother, as "D-Rich." Hendrix recalled seeing a white car at the scene, but he denied seeing the Defendant in the car.

On cross-examination, Hendrix testified that he did not remember the written statement he gave at the hospital during Investigator Colon's interview. In the statement, Hendrix told officers that a person known as "Baldy" was driving the white car. Hendrix acknowledged that he knew "Baldy" and that he had a sexual relationship with "Baldy's" girlfriend, Megan, while "Baldy" was in jail. Hendrix denied that he sold marijuana and stated that the marijuana he had was for personal use. Hendrix acknowledged that the Defendant was his cousin, but stated that he had only learned about the relation after the shooting. Hendrix testified that he had no idea why the Defendant would shoot him and denied that there had been any problems between them in the past. Hendrix also testified that he had been at the barber shop earlier that day and had seen "Baldy" there.

Jackson Police Department ("JPD") Officer James Jay Carter responded to a call reporting shots fired on December 10, 2013. Officer Carter testified that dispatch advised "that they had seen several subjects getting into a white-colored vehicle and leaving eastbound on . . . Lane Avenue." When he arrived on the scene, Officer Carter saw Hendrix laying on the ground beside a vehicle with multiple gunshot wounds to his chest. Officer Carter testified that Hendrix could not speak but that he responded by nodding.

By asking him yes or no questions, Officer Carter determined that Hendrix knew the shooters, that there were four people involved, and that they left in a white four-door Honda. On cross-examination, Officer Carter testified that Hendrix alerted him to four small individually-wrapped bags of marijuana in his pocket. Officer Carter acknowledged that the way the marijuana was packaged could indicate that Hendrix was selling.

JPD Investigator Marvin Jerome Rodish, Jr. testified that he processed the crime scene on the day of the shooting. Investigator Rodish collected ten shell casings and two bullets. Investigator Rodish acknowledged that there was no way to know how long the shell casings and bullets had been at the scene.

JPD Investigator Alberto Colon testified that he was a sergeant in the Violent Crimes Unit when he led the investigation in this case. Hendrix gave Investigator Colon the street names of the two shooters when he was interviewed in the hospital about one week after the shooting. Investigator Colon recalled that Hendrix did not hesitate or appear confused or doubtful about the identification. Based on the street names, Investigator Colon was able to identify the suspects and put together photo lineups for Hendrix to view. Hendrix identified the Defendant and Dequevion as the shooters on each separate photo lineup. Investigator Colon testified that he interviewed Hendrix again before the preliminary hearing, and Hendrix told him where the second shooter had been standing. Given this new information, Investigator Colon went back to the scene that day to investigate further. Investigator Colon found four additional .9 millimeter shell casings on the ground where Hendrix said the second shooter had been standing. The discovery of the additional shell casings occurred about a month after the shooting. Another bullet was also recovered from Hendrix's body at the hospital and collected as evidence.

On cross-examination, Investigator Colon confirmed that none of the shell casings were sent for fingerprint analysis and that the guns used in the shooting had never been located. Investigator Colon also acknowledged that he spoke with several witnesses at the scene but that none of the witnesses gave any valid or useful information. Investigator Colon confirmed that Hendrix mentioned an individual named "Baldy" in his statement and that Investigator Colon identified and interviewed "Baldy." On redirect, Investigator Colon confirmed that Hendrix never identified anyone other than the Defendant and Dequevion as the shooters. Investigator Colon also stated that when he interviewed Hendrix at the hospital, he identified the Defendant as both "Little Yogi" and "Morico."

Kasia Michaud testified that she was a Special Agent Forensic Scientist employed by the Tennessee Bureau of Investigation and assigned to the Firearms Identification

Unit. Agent Michaud examined the shell casings and bullets in this case which included ten .40 caliber shell casings, three bullets, and four .9 millimeter shell casings. Agent Michaud determined that the ten .40 caliber shell casings were all fired from the same gun and that the four .9 millimeter shell casings were all fired from a second gun. Agent Michaud also determined that the three bullets came from the same gun, although she could not confirm the bullets came from any of the shell casings. On cross-examination, Agent Michaud confirmed that she could not tell how long the shell casings or bullets had been on the ground or if they had been fired at the same time.

After deliberation, the jury returned a verdict of guilty as to both counts. At the July 6, 2015 sentencing hearing, the trial court merged the aggravated assault conviction into the attempted first degree murder conviction and sentenced the Defendant as a Range I, Standard Offender to twenty-two years in the Tennessee Department of Correction. The Defendant filed a motion for new trial on July 7, 2015, and a hearing was held on June 21, 2016, at which the trial court denied relief. This timely appeal follows.

## ANALYSIS

The Defendant argues that the evidence was insufficient to support his convictions for aggravated assault and attempted first degree murder. As an initial matter, although the Defendant raises the sufficiency of his aggravated assault conviction as an issue, he provides no argument or analysis regarding his aggravated assault conviction. Accordingly, the issue is technically waived. See Tenn. Ct. Crim. App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate reference to the record will be treated as waived in this court."). Nevertheless, upon our review, the evidence is more than sufficient to support the aggravated assault conviction. In regard to the attempted first degree murder, we likewise conclude that the evidence is sufficient to support his conviction.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Similarly, Rule 13(e) of the

Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

As relevant here, a person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense, "[a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.]" T.C.A. § 39-12-101(a)(2). First degree murder is the premeditated and intentional killing of another person. Id. § 39-13-202(a)(1). Premeditation is defined as "an act done after the exercise of reflection and judgment." Id. § 39-13-202(d). Premeditation requires a finding that "the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time." Id. The statute also specifies that "[t]he mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation." Id.

The existence of premeditation is a question of fact for the jury to determine and may be inferred from the circumstances surrounding the offense. State v. Young, 196 S.W.3d 85, 108 (Tenn. 2006) (citing State v. Bland, 958 S.W.2d 651, 660 (Tenn. 1997)); State v. Suttles, 30 S.W.3d 252, 261 (Tenn. 2000). Factors that may support the existence of premeditation include, but are not limited to: the use of a deadly weapon upon an unarmed victim, the particular cruelty of the killing, the infliction of multiple wounds, declarations by the defendant of an intent to kill, lack of provocation by the victim, failure to aid or assist the victim, evidence of procurement of a weapon,

preparations before the killing for concealment of the crime, calmness immediately after the killing, and destruction and secretion of evidence of the killing. State v. Kiser, 284 S.W.3d 227, 268 (Tenn. 2009); State v. Leach, 148 S.W.3d 42, 53-54 (Tenn. 2004); State v. Davidson, 121 S.W.3d 600, 615 (Tenn. 2003); Bland, 958 S.W.2d at 660.

The Defendant specifically argues that the evidence is insufficient because Hendrix's testimony was "the only proof the State presented" and was not adequately corroborated, particularly considering that Hendrix's testimony "was inconsistent with his prior written and oral statements." At trial, Hendrix could not initially recall the statement the Defendant made before he shot him until he was reminded of his preliminary hearing testimony. Additionally, at trial, Hendrix did not remember who was in the white car he saw at the scene, but he told officers in his written statement that "Baldy" was driving the car. Officer Carter also confirmed that Hendrix told him immediately after the shooting that he saw a white car leaving the area with four people inside. The Defendant essentially challenges the credibility of Hendrix's testimony at trial and the jury's decision to credit his testimony. Because it is within the province of the jury to resolve issues of credibility and determine the value of the evidence presented, we will not reevaluate issues of credibility. See Bland, 958 S.W.2d at 659. Here, Hendrix positively identified the Defendant in a photo lineup and at trial as the individual who shot him. He testified that he could clearly see the Defendant before he shot him, and that he had no doubt about his identity. This testimony, alone, is sufficient to sustain the Defendant's conviction without additional corroboration. See State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) ("[T]he testimony of a victim, by itself, is sufficient to support a conviction.").

The Defendant also appears to argue that the evidence was insufficient because the State did not prove his motive, and because there was no "physical evidence" placing the Defendant at the scene. Motive is not an element of the crime; therefore, the State is not required to prove the defendant's motive for committing the crime. See State v. Dwight Richeson, No. 03C01-9209-CR-324, 1993 WL 188049, at *2 (Tenn. Crim. App. June 2, 1993) (holding that the State is not required to prove motive if it is not an element of the crime). Additionally, as the Tennessee Supreme Court has held, "[c]ircumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." State v. Hawkins, 406 S.W.3d 121, 131 (Tenn. 2013) (citing State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012); Dorantes, 331 S.W.3d at 379-81). Here, Hendrix testified that the Defendant confronted him while entering a barber shop and said "B****, you're about to die," before shooting Hendrix. Hendrix was shot fourteen times by the Defendant and Dequevion, who he repeatedly identified as the shooters without hesitation. Viewed in the light most favorable to the State, a reasonable juror could have found the Defendant

guilty of attempted first degree murder beyond a reasonable doubt. Accordingly, the Defendant is not entitled to relief.

Finally, we detect some errors in the entry of the judgment forms in this case. The trial court noted in the title and the "Special Conditions" box of the attempted first degree murder judgment form that the Defendant's aggravated assault conviction, count two, was merging with the attempted first degree murder conviction, count one; however, the trial court did not enter a separate judgment form for the aggravated assault conviction, as required by the Tennessee Supreme Court. See State v. Berry, 503 S.W.3d 360, 364 (Tenn. 2015) ("[W]hen two jury verdicts are merged into a single conviction, the trial court should complete a uniform judgment document for each count."). Therefore, we must remand the case to the trial court for entry of a separate judgment form showing the entry of merger as to the specified count.

## CONCLUSION

We affirm the judgments of the trial court but remand the case for entry of a corrected judgment as specified in this opinion.

_____
CAMILLE R. McMULLEN, JUDGE

- 7 -