
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 23, 2017 at Knoxville

**STATE OF TENNESSEE v. RONNIE BREWER**

**Appeal from the Circuit Court for Grundy County**
**No. 4156      Thomas W. Graham, Judge**

**No. M2016-01651-CCA-R3-CD**

The Defendant, Ronnie Brewer, was convicted by a Grundy County Circuit Court jury of reckless aggravated assault, a Class D felony. *See* T.C.A. § 39-13-102 (2003) (amended 2005, 2009, 2010, 2011, 2013). The trial court sentenced the Defendant to three years, which was suspended to probation after six months' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his conviction, (2) the trial court erred during jury instructions, and (3) the trial court erred during sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

B. Jeffery Harmon, District Public Defender, and Robert G. Morgan, Assistant Public Defender, for the appellant, Ronnie Brewer.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; J. Michael Taylor, District Attorney General; and David McGovern and Steve Strain, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This case relates to a 2005 altercation between the Defendant and Kevin Campbell during which the Defendant displayed a firearm and two knives. At the trial, Courtney Vanhooser testified that she was age sixteen at the time of the incident and that Mr. Campbell was her boyfriend. She said that on April 11, 2005, she and Mr. Campbell were high school students, that they left school early to obtain medicine for her headache, and that they planned to return to school. She said that Mr. Campbell drove her home, that she took medication, that her headache subsided, and that she and Mr. Campbell decided to pick up

her cousin, Scotty Slatton, and to drive around in Mr. Campbell's truck. She recalled the truck had a bench seat, that she sat in the middle, and that Mr. Slatton sat to her right.

Ms. Vanhooser testified that they drove on a mountain road, that they did not want to drive too far because the truck was low on gas, and that they intended to turn around on the Defendant's property, although she did not know at the time that the Defendant owned the property. She said that Mr. Campbell turned onto the Defendant's property and prepared to back up onto the road and that the Defendant motioned for Mr. Campbell to drive toward the Defendant. Ms. Vanhooser said Mr. Campbell drove toward the Defendant. She denied that they had been "turning any donuts" on the Defendant's property, using drugs, or engaging in unlawful conduct. She said that they had not "parked or hung out" on the Defendant's property for at least six months before the incident and that she had never seen the Defendant previously.

Ms. Vanhooser testified that the Defendant began "ranting and raving," that he was angry, that he accused them of turning donuts and using drugs on his property, and that he asked for their names. She said that the Defendant did not have a weapon at this time, that Mr. Slatton provided his name, and that she provided her name. She said that Mr. Campbell refused to provide his name to the Defendant and that Mr. Campbell told the Defendant that they did not want any trouble and were leaving. She said that the Defendant struck Mr. Campbell's face with a fist, that Mr. Campbell put the truck in reverse, and that the Defendant pulled a small handgun from his pants pocket and pointed it at the truck's windshield. She said that Mr. Campbell stopped the truck, that they raised their hands, and that the Defendant walked to the truck and attempted to remove the keys from the ignition. She said that Mr. Campbell prevented the Defendant from taking the keys, that the Defendant struck Mr. Campbell's head with the gun, and that Mr. Campbell's head wound began to bleed. She said that the Defendant took two or three steps backward, "squared off," and pointed the gun at Mr. Campbell's head. She thought the Defendant was going to kill Mr. Campbell and said she grabbed Mr. Campbell attempting to move him away from the gun. She recalled screaming and pleading for the Defendant not to kill them and said the Defendant lowered the gun and struck her face with his right hand. She said she sustained bruises but was otherwise unharmed.

Ms. Vanhooser testified that the Defendant struck Mr. Campbell a couple more times and that the Defendant continued yelling they had "messed up" his property. She said that the Defendant threatened to kill them if they reported the incident to the police and that the Defendant said his friends and family worked for the police department. She said the Defendant placed the gun in his pants pocket, removed a knife from his pants pocket, "rubbed it all over" Mr. Campbell's face, and threatened to cut Mr. Campbell's throat and to cut off his nose. She said the Defendant removed a second knife from his pants pocket, rubbed both knives on Mr. Campbell's face, and threatened to cut off Mr. Campbell's head.

-2-

She recalled that the Defendant's eyes were yellow and that he had an odd odor, although she said the odor was not alcohol. She said that eventually, the Defendant told them they could leave. She said she was "scared to death."

Ms. Vanhooser testified that after they left, Mr. Campbell drove Mr. Slatton home and that she and Mr. Campbell went to a friend's home to obtain advice about whether to call the police. She recalled that the friend advised them to contact the police, that they called the police, and that they sought medical treatment for Mr. Campbell's head wound, which required staples.

On cross-examination, Ms. Vanhooser testified that she had been on the Defendant's property twice previously but that she had not seen the Defendant those times. She said that on the day of the incident, she and Mr. Campbell left school around noon but conceded it could have been later. She said that her grandmother consented to her leaving school and that she intended to return, although school dismissed at 2:45 p.m. She said that Mr. Slatton lived across the street from her, that they decided to drive on the mountain road where the Defendant lived, and that they arrived on the Defendant's property between 12:30 and 1:00 p.m. She said that Mr. Campbell drove the truck eight to ten feet onto the gravels of the Defendant's property before attempting to back onto the road.

Ms. Vanhooser testified that the Defendant's wife stood a few feet behind the Defendant during the incident. Ms. Vanhooser said that she was unaware the Defendant's property was marked with no trespassing signs and that she did not see any signs, although she did not dispute the signs were posted. She denied Mr. Campbell cursed the Defendant and said they were polite to the Defendant. She said that the police came to Mr. Campbell's house to talk to him after Mr. Campbell obtained medical treatment.

Ms. Vanhooser testified that she did not speak to the Defendant's wife during the incident. Ms. Vanhooser denied stating that she had been on the Defendant's property the day before the incident. She said that she had seen people on the Defendant's property previously but that she was not on the Defendant's property the day before the incident.

On redirect examination, Ms. Vanhooser testified that they had no intent to remain on the Defendant's property and that the Defendant did not need a handgun or a knife to force them to leave. She said Mr. Campbell only pulled onto the Defendant's property to turn around and drive away. On recross-examination, she stated that she never obtained the Defendant's permission to enter his property.

Scotty Slatton testified that at the time of the incident, he was age seventeen, that Ms. Vanhooser and Mr. Campbell picked him up from home, and that they decided to ride around the area in Mr. Campbell's truck. He said that they drove up a mountain road and

that they drove onto the Defendant's property in order to turn around and drive away. He said that he had never seen the Defendant before this incident, although he had used the Defendant's property as a place to turn his car around about one year before this incident.

Mr. Slatton testified that Mr. Campbell drove the truck onto the Defendant's property, that Mr. Campbell shifted the gear to reverse, and that the Defendant motioned for them to drive toward the Defendant. Mr. Slatton said that the Defendant accused them of destroying his property and that they denied they had been on the Defendant's property. Mr. Slatton said that the Defendant claimed someone had been on his property "turning donuts" and that Mr. Campbell denied it was them. Mr. Slatton said that the Defendant wanted their names, that Ms. Vanhooser and Mr. Slatton provided their names, that Mr. Campbell told the Defendant, "It don't matter, I don't want no problems, I'm leaving," and that Mr. Campbell shifted the gear to reverse just before the Defendant pulled out a firearm. Mr. Slatton said he lowered his head, closed his eyes, and prayed the Defendant would not fire the gun.

Mr. Slatton testified that the Defendant walked to the truck, that Mr. Campbell and the Defendant struggled for the keys, and that the Defendant struck Mr. Campbell's face with a fist. Mr. Slatton said that the Defendant pointed the gun at Mr. Campbell, that Ms. Vanhooser moved between Mr. Campbell and the gun, and that she begged the Defendant not to shoot them. Mr. Slatton said that the Defendant continued yelling that someone had destroyed his property and had been using drugs on his property and that the Defendant behaved as though he were "ill." Mr. Slatton stated that the Defendant also removed two knives from his pants pocket, placed a knife on Mr. Campbell's face, and threatened to kill them if they contacted the police. Mr. Slatton said the Defendant frightened him.

On cross-examination, Mr. Slatton testified that he had been on the Defendant's property about one year before the present incident. He thought Mr. Campbell and Ms. Vanhooser picked him up around noon but said it could have been later. Mr. Slatton said Mr. Campbell and Ms. Vanhooser intended to return to school that afternoon. He said that Mr. Campbell's truck was about ten feet onto the Defendant's property and that Ms. Vanhooser saw the Defendant first. Mr. Slatton said that the Defendant first punched Mr. Campbell after the Defendant displayed the handgun and after the Defendant and Mr. Campbell struggled for the keys. Mr. Slatton said that he told his parents about the incident but that he did not seek charges against the Defendant because the Defendant did not threaten to kill him personally and did not point the gun at him.

Kevin Campbell testified that he was age seventeen at the time of the incident and that he was age eighteen at the time of the trial. He said that he had never seen the Defendant before the incident but that he had been to the Defendant's property previously. He said that he and Ms. Vanhooser picked up Mr. Slatton, that they decided to drive around the area, and that his truck was low on gas. He said that he turned onto the Defendant's property to turn

his truck around, that he did not know the Defendant owned the property, and that he had no intention of staying on the property. He denied turning donuts, using drugs, or doing anything improper.

Mr. Campbell testified that Ms. Vanhooser saw the Defendant first and that the Defendant waved for Mr. Campbell not to leave. Mr. Campbell said that he did not know what the Defendant wanted and that he drove his truck slightly toward the Defendant. Mr. Campbell said that the Defendant began yelling about people doing donuts, littering, and "tearing up" his property, that Mr. Campbell told the Defendant he had not done those things, and that the Defendant asked for their names. Mr. Campbell said he told the Defendant that his name was not important, that he did not want any trouble, and that he was leaving. Mr. Campbell said that the Defendant struck him in the jaw with a hand, that Mr. Campbell "threw it in reverse," and that Mr. Campbell backed up his truck about ten feet. Mr. Campbell said that the Defendant removed a small firearm from his rear pants pocket and pointed it at Mr. Campbell and that Mr. Campbell stopped the truck and raised his hands.

Mr. Campbell testified that the Defendant walked to the truck, began hitting him with the gun, and accused him of attempting to run over the Defendant. Mr. Campbell said his head bled from the trauma. He said that the Defendant stopped hitting him and backed away from the truck and that the Defendant pointed the gun at his head. Mr. Campbell thought the Defendant was going to kill him. Mr. Campbell said Ms. Vanhooser screamed for the Defendant not to shoot and placed herself between Mr. Campbell and the gun. Mr. Campbell said the Defendant lowered the gun, approached the truck, struck Ms. Vanhooser, and removed knives from his pants pockets. Mr. Campbell said the Defendant threatened him, rubbed a knife across his nose, and claimed he could kill Mr. Campbell and get away with it. He said that the Defendant obtained his license plate number and calmed down and that they left the Defendant's property. Mr. Campbell said that he spoke to the police after obtaining medical treatment for his head wound.

On cross-examination, Mr. Campbell testified that he had never heard of the Defendant and did not know whether the Defendant had a reputation for violence. He agreed the Defendant had not threatened them since the incident. Although Mr. Campbell could not recall the Defendant's initial words, Mr. Campbell agreed the Defendant wanted to know who they were and why they were on the Defendant's property. Mr. Campbell said that when the Defendant initially approached them, the truck's engine was running while the truck was in park. Mr. Campbell denied cursing the Defendant and said the Defendant reached inside the truck before striking him with the gun. He said the Defendant's knives included a "flip blade" and a "flip open." He said the Defendant touched his nose with both knives.

Mr. Campbell testified that he did not have a headache on the day of the incident. When presented with his preliminary hearing testimony, he agreed he previously said he had a headache. He did not know the Defendant had posted no trespassing signs and said he had seen many vehicles parked on the property previously. He said that after he drove Mr. Slatton home, he drove to a friend's home because he did not know what to do.

Linda Brewer, the Defendant's wife, testified that on the day of the incident, the Defendant mowed the lawn and that the Defendant did not drink alcohol. She said that the Defendant took a break and sat inside their truck to drink tea and eat a snack. She said that she sat with the Defendant and that Mr. Campbell's truck turned onto their driveway. She said that the Defendant got out of their truck and that Mr. Campbell's truck stopped. She said the Defendant asked the people inside the truck what they were doing there and that Mr. Campbell told the Defendant that it was not any of the Defendant's "G.D. business." She said that the Defendant asked for the names of everyone inside Mr. Campbell's truck and that Mr. Campbell said, "It's not none of your G.D. business." She said that Mr. Campbell's cursing the Defendant caused the Defendant to become angry and that the Defendant hit Mr. Campbell through the truck window.

Ms. Brewer testified that Mr. Campbell's truck began to back up, that she thought Mr. Campbell was going to leave, and that Mr. Campbell put the truck in "low gear and . . . took off . . . flying" toward the Defendant, who had to jump away to avoid being struck by Mr. Campbell's truck. She said that she got out of their truck and stood on the driver's side and that the Defendant removed a handgun from his pants pocket. She said that the Defendant "jumped over" to Mr. Campbell's truck, reached inside, turned off the engine, and yelled at Mr. Campbell and his passengers. She said the Defendant told them that they could get in a lot of trouble, especially because five or more no trespassing signs were posted. She conceded that the Defendant struck Mr. Campbell a couple more times and said that the Defendant told them that people had entered their property to use drugs and had left broken beer bottles and debris on their property. She said the Defendant asked her to move closer to the truck to hear their names because the Defendant stated that he was going to start pressing charges against people who did not stop trespassing and "messing up" their property.

On cross-examination, Ms. Brewer testified that she and the Defendant did not live on the property permanently and that they had problems with people "partying" on the property when they were not there. She conceded that she did not see Mr. Campbell or his passengers do anything on the property other than pull onto the driveway. She agreed she had never seen these people before this incident. She disagreed that the Defendant assumed Mr. Campbell and his friends were going to "cause some problems on that property." She said the Defendant attempted to tell them not to come onto the property and to tell their friends not to come onto the property.

Ms. Brewer testified that the Defendant did not have a "bad temper" unless he was provoked. She agreed the Defendant first struck Mr. Campbell when Mr. Campbell was sitting inside the truck. She said the Defendant struck Mr. Campbell because Mr. Campbell called the Defendant an "S.O.B." She disagreed that the Defendant did not act in self-defense and said that the Defendant was defending his property. She agreed, though, the Defendant was mad when he struck Mr. Campbell. She said that the Defendant did not hit Mr. Campbell again until Mr. Campbell attempted to run over the Defendant. She agreed Ms. Vanhooser was never a threat to the Defendant.

The Defendant testified that he had been diagnosed with glaucoma and that he might eventually lose all his eyesight. He said that on the day of the incident, he mowed the lawn and that he took a break by sitting inside his truck with his wife. He said that while they were sitting inside the truck, he heard a vehicle on the road. He said that the truck turned onto his driveway, that he walked toward the truck to investigate, and that he asked Mr. Campbell what he was doing. The Defendant said that Mr. Campbell said it was none of the Defendant's business and that the Defendant told Mr. Campbell he owned the property, referenced the no trespassing signs, and asked for Mr. Campbell's name. The Defendant said that Mr. Campbell responded, "[I]t ain't none of your god---- business," that the Defendant became angry, and that the Defendant hit Mr. Campbell with a fist.

The Defendant testified that afterward, Mr. Campbell put the truck in reverse, backed up the truck about ten feet, stopped, and drove at the Defendant as fast as possible. The Defendant said that he had a .25-caliber handgun in his pocket, that he pointed it at Mr. Campbell, and that he moved to prevent being struck by Mr. Campbell's truck. The Defendant said he threw up his hands, walked toward Mr. Campbell's truck, reached inside and turned off the engine, and returned the gun to his pants pocket. The Defendant said that he asked Mr. Campbell and his passengers what they thought they were doing by attempting to run over him and told them that someone could have been hurt or killed. The Defendant said he removed a pocketknife from his pants pocket and showed it to them but returned it to his pants pocket. He said that he instructed them to provide their names to his wife and that he would press charges against them if they returned. The Defendant said his intent was to stop people from "tearing up" and vandalizing his property. The Defendant recalled that Ms. Vanhooser cried and wanted to leave and that he told them to leave and to stop parking on his property.

The Defendant testified that he had owned the property for eight years, that he closed the "beer joint" on the property in 2000 as a result of his failing health, and that he had sold the property since the incident in this case. He said that three or four no trespassing signs were posted on the property and that one was posted at his driveway. The Defendant said that on previous occasions, he caught people using drugs on his property and found people inside his home using drugs. He said that after he closed the beer joint, he and his wife

stayed at the home two or three nights per week until someone stole the electricity box on the home and damaged the property.

On cross-examination, the Defendant testified that he did not have an issue with someone using his driveway to turn around on the road. He said that had Mr. Campbell explained he was only turning around, there would not have been a problem. He said, though, enough room existed for someone to turn a vehicle around without driving onto his driveway. He agreed he did not know if Mr. Campbell or Ms. Vanhooser were involved in the previous vandalism or drug-related incidents. He denied that he initially thought Mr. Campbell and his passengers were people entering his property to cause problems. The Defendant said he struck Mr. Campbell because Mr. Campbell called him a "son-of-a-b----," which made him angry. The Defendant said that he did not know if he were in danger from Mr. Campbell but that Mr. Campbell attempted to run over him with Mr. Campbell's truck. The Defendant admitted hitting and pointing a gun at Mr. Campbell.

On redirect examination, the Defendant testified that he hit Mr. Campbell with his fist after a heated exchange, that Mr. Campbell cursed him, that Mr. Campbell did not have permission to be on his property, and that he asked Mr. Campbell to leave. On recross-examination, the Defendant stated that Mr. Campbell left the property willingly after the Defendant removed the gun and knife from the Defendant's pants pocket. He denied striking Mr. Campbell with the handgun.

Upon this evidence, the Defendant was convicted of the reckless aggravated assault of Mr. Campbell, and the jury imposed a fine of zero dollars. On March 29, 2006, the trial court imposed a three-year sentence, all suspended to probation after six months' confinement. The judgments were filed on March 29, and the Defendant filed motions for a reduced sentence and a new trial on April 27. The Defendant was permitted to continue his release on bond pending the hearing on the motion for a new trial. The motion for a new trial hearing was not held until July 16, 2016, more than ten years after the trial.

## I.    Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his conviction. He does not support his contention with any argument or citations to the record and merely requests that this court review the record to determine whether the evidence is sufficient. The State responds that the Defendant has waived consideration of this issue for failure to present an adequate argument and alternatively, argues that the evidence is sufficient.

Tennessee Rule of Appellate Procedure 27(a) requires the appellant's brief, in relevant part, to include an argument that includes "the contentions . . . with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require

-8-

appellate relief, with citations to the authorities and appropriate references to the record . . . relied on[.]" The rules of this court provide, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived[.]" Tenn. Ct. Crim. App. R. 10(b); *see State v. Killebrew*, 760 S.W.2d 228, 231-32 (Tenn. Crim. App. 1988).

The Defendant's brief cites to legal authority relative to the standard of appellate review for sufficiency of the evidence and to the statutory definition of reckless aggravated assault. However, the Defendant's one-sentence request for this court to review the record and to determine whether the evidence is insufficient without presenting any argument relative to why the evidence is insufficient and why he is entitled to appellate relief does not comply with Rule 27(a). As result, this issue is waived. *See Killebrew*, 760 S.W.2d at 231-32. The Defendant is also not entitled to plain error relief because the record reflects that the evidence is sufficient to support the reckless aggravated assault conviction. *See* T.C.A. § 39-13-102(a)(1)(B). We caution counsel that compliance with the Rules of Appellate Procedure and the Rules of the Court of Criminal Appeals is expected.

## II.    Defense of Property Jury Instruction

The Defendant contends that the trial court erred by denying his request for a jury instruction regarding defense of property. He argues that the instruction was warranted based upon Mr. Campbell's trespassing and assaultive conduct during the incident and because the Defendant's conduct was not unjustified. The State responds that trial court properly denied the Defendant's request.

A criminal defendant has "a right to a correct and complete charge of the law." *State v. Hanson*, 279 S.W.3d 265, 280 (Tenn. 2009) (citing *State v. Garrison*, 40 S.W.3d 426, 432 (Tenn. 2000)). As a result, a trial court has a duty "to give proper jury instructions as to the law governing the issues raised by the nature of the proceeding and the evidence introduced at trial." *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013) (citing *State v. Dorantes*, 331 S.W.3d 370, 390 (Tenn. 2011)); *see State v. Thompson*, 519 S.W.2d 789, 792 (Tenn. 1975). A jury instruction related to general defenses is not required to be submitted to the jury "unless it is fairly raised by the proof." T.C.A. § 39-11-203(c) (2014). An erroneous jury instruction, though, may deprive the defendant of the constitutional right to a jury trial. *See Garrison*, 40 S.W.3d at 433-34.

Our supreme court has concluded that sufficient evidence to fairly raise a general defense "is less than that required to establish a proposition by a preponderance of the evidence." *Hawkins*, 406 S.W.3d at 129. A trial court's determination in this regard "must consider the evidence in the light most favorable to the defendant and draw all reasonable inferences in the defendant's favor." *Id*.; *see State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001);

*Johnson v. State*, 531 S.W.2d 558, 559 (Tenn. 1975); *State v. Bult*, 989 S.W.2d 730, 733 (Tenn. Crim. App. 1998); *see also State v. Shropshire*, 874 S.W.2d 634, 639 (Tenn. Crim. App. 1993). If evidence has been presented which reasonable minds could accept as a defense, "the accused is entitled to appropriate instructions." *Johnson*, 531 S.W.2d at 559. A jury instruction is "prejudicially erroneous only if the . . . charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005).

At the conclusion of the proof, the defense requested a jury instruction on defense of property. The trial court initially stated that the proof did not support the instruction, after the prosecutor stated that the Defendant could not use deadly force to defend his property. Trial counsel argued that the Defendant did not use deadly force to defend his property. The court noted that the Defendant displayed a deadly weapon, and counsel conceded the Defendant displayed a deadly weapon after Mr. Campbell threatened the Defendant with Mr. Campbell's truck, which was relevant to the self-defense instruction, not a defense of property instruction.

Trial counsel argued that the defense of property instruction was relevant to the initial interaction between the Defendant and Mr. Campbell in which they spoke and the Defendant struck Mr. Campbell with a fist. Counsel argued that the Defendant's striking Mr. Campbell was not deadly force and was done in the defense of the Defendant's property to end the trespass. Counsel requested both the self-defense instruction relative to the Defendant's displaying the gun and the knives and the defense of property instruction relative to the Defendant's striking Mr. Campbell. The prosecutor argued that no proof showed the Defendant used any kind of force to prevent a trespass and that the evidence showed that the Defendant only used force because Mr. Campbell called the Defendant a "son-of-a-b----," which angered the Defendant. The prosecutor noted that the Defendant testified he struck Mr. Campbell because the Defendant was angry, not because the Defendant attempted to end Mr. Campbell's trespassing on the Defendant's property or to protect the Defendant's property.

The trial court determined that the Defendant was not protecting his property when he first struck Mr. Campbell and that the Defendant's conduct was the result of Mr. Campbell's calling the Defendant a derogatory name. The court noted that the Defendant wanted Mr. Campbell and his passengers to leave the property but found that the Defendant's testimony showed the Defendant struck Mr. Campbell because the Defendant was angry Mr. Campbell called him a derogatory name.

It is a general defense to a criminal prosecution that a defendant's conduct is justified. T.C.A. § 39-11-601 (2014). Furthermore, a defendant may assert a protection of property

defense, which states, "A person in lawful possession of real or personal property is justified in threatening or using force against another, when and to the degree it is reasonably believed the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property." *Id.* § 39-11-614(a) (2014); *see* T.P.I.–Crim. 40.08 Defense: Protection of property (19th ed. 2015). However, "[a] person is not justified in using deadly force to prevent or terminate the other's trespass on real estate or unlawful interference with personal property." T.C.A. § 39-11-614(c); *see State v. Clifton*, 880 S.W.2d 737, 743-44 (Tenn. Crim. App. 1994); T.P.I.–Crim. 40.08. Deadly force is that which is intended or known by the defendant to cause or, in the manner of its use or intended use, is capable of causing death or serious bodily injury[.]" T.C.A. § 39-11-602(2) (2014).

The defense argued in the trial court that the defense of property instruction was relevant only to the Defendant's initial encounter with Mr. Campbell during which the Defendant struck Mr. Campbell with a fist. To the extent that the defense now argues that the instruction was applicable to a broader portion of the incident, the Defendant is not entitled to present an argument for the first time on appeal. *See* T.R.A.P. 36(a) ("[R]elief may not be granted in contravention of the province of the trier of fact. Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of the error."). Our review is limited to whether the instruction applied to the initial encounter that occurred before Mr. Campbell's alleged attempt to run over the Defendant with Mr. Campbell's truck.

The record reflects, in the light most favorable to the Defendant, that Ms. Brewer testified that when Mr. Campbell arrived on the Defendant's property, the Defendant asked Mr. Campbell what he and his passengers were doing on his property. Ms. Brewer stated that Mr. Campbell told the Defendant that it was not any of the Defendant's "G.D. business." Ms. Brewer said that the Defendant asked for everyone inside Mr. Campbell's truck to provide their names but that Mr. Campbell responded, "It's not none of your G.D. business," and called the Defendant an "S.O.B." Ms. Brewer said that Mr. Campbell's cursing caused the Defendant to become angry and that the Defendant struck Mr. Campbell through the truck window.

The Defendant provided similar testimony regarding the initial incident. The Defendant stated that after the Defendant asked everyone for their names, Mr. Campbell said, "[I]t ain't none of your god---- business," that the Defendant became angry, and that the Defendant hit Mr. Campbell with a fist. In fact, the Defendant testified on cross-examination that he struck Mr. Campbell because Mr. Campbell called the Defendant a "son-of-a-b----," which angered the Defendant.

We conclude that the trial court did not err by denying the Defendant's request for an

instruction on defense of property. The defense proof showed that the Defendant struck Mr. Campbell during their initial encounter because the Defendant became angry when Mr. Campbell insulted the Defendant, not because the Defendant attempted to end a trespass. Although the proof shows the Defendant attempted to investigate Mr. Campbell's presence on the property, the Defendant stated he struck Mr. Campbell because Mr. Campbell cursed the Defendant. The Defendant is not entitled to relief on this basis.

### III.    1989 Sentencing Act

The Defendant contends that he was erroneously sentenced pursuant to the laws effective before the June 2005 Amendments to the Sentencing Act. He argues that because the offense occurred on April 11, 2005, the trial court should have provided him the choice to be sentenced pursuant to the 2005 Amendments effective at the time of the 2006 sentencing hearing. The State responds that the issue is waived because the Defendant failed to raise the issue in his motion for a new trial and alternatively, that the trial court properly sentenced the Defendant because the trial court discussed the then-recent amendments and because the Defendant never waived his ex post facto rights to be sentenced pursuant to the 2005 Amendments.

The record reflects that the Defendant contended relative to sentencing in his motion for a new trial that the trial court "failed to comply with the 1989 Sentencing Reform Act when it sentenced the Defendant and [that] the sentence was excessive." At the motion hearing, the Defendant alleged that although the 2005 Amendments to the Sentencing Act addressed the problems in *Blakely*, the trial court made findings of fact that were utilized to enhance the Defendant's sentence and to provide a basis for denying full probation. The Defendant argued that the court's findings of fact should have been the province of the jury, not the trial court.

We conclude that the Defendant contends for the first time on appeal that he should have been provided a choice of being sentenced pursuant to the 2005 Amendments to the 1989 Sentencing Act. The Defendant is not permitted to raise the issue for the first time on appeal. *See* T.R.A.P. 36(a). Furthermore, we note that an extensive discussion was held at the sentencing hearing regarding this issue. Afterward, the trial court decided that the Defendant would be sentenced pursuant to the "old law" and that nothing had been presented showing the Defendant would receive any benefit under the "new law." The court noted that the numbering of the sentencing enhancement factors had changed but that the substance of the factors at issue in this case had not been modified. *See* T.C.A. § 40-35-114 (2003) (amended 2005, 2007, 2008, 2012). The court noted that it had "all kinds of waiver forms" but stated that no need existed to waive ex post facto considerations. No objections were made, and the sentencing hearing proceeded with witness testimony. This court has

-12-

previously determined that absent a proper waiver of a defendant's ex post facto protections, "the sentencing law in effect at the time of the offenses [is] the proper framework for establishing the defendant's sentence." *State v. Saint*, 284 S.W.3d 340, 347 (Tenn. Crim. App. 2007). The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE